KOEHRING COMPANY, Plaintiff,

v.

The MANITOWOC COMPANY, INC., Defendant.

Civ. A. No. 74–C–564.

United States District Court, E. D. Wisconsin.

Sept. 22, 1976.

---

Edward M. O'Toole, Chicago, Ill., Andrew J. Beck, Milwaukee, Wis., for plaintiff.

Phillip H. Mayer, Chicago, Ill., Walter S. Davis, Milwaukee, Wis., for defendant.

## DECISION and ORDER

REYNOLDS, Chief Judge.

In this patent infringement action, plaintiff Koehring Company has moved to disqualify Phillip H. Mayer and his law firm, Wolfe, Hubbard, Leydig, Voit & Osann, Ltd.[1] (hereafter "Wolfe-Hubbard") from representing the defendant Manitowoc Company upon the ground that Wolfe-Hub-

---

1. Effective April 1, 1976, the firm's name was changed to Leydig, Voit, Osann, Mayer & Holt, Ltd.

bard's representation is a breach of Canon 4 of the Code of Professional Responsibility.[2] In support of the motion, plaintiff has submitted the affidavits of Andrew J. Beck and Atty. Edward M. O'Toole and accompanying exhibits. Defendants have submitted affidavits of Phillip H. Mayer and John D. West and the transcribed deposition of Andrew J. Beck. Oral argument was heard on the motion on September 10, 1976. For the reasons stated below, the motion is granted.

The pertinent facts are as follows. By letter dated September 26, 1972 to John D. West, President of Manitowoc, Andrew J. Beck, house patent counsel for Koehring, charged Manitowoc with infringement of two of its patents, U.S. 3,083,837 ('837 patent) and U.S. 3,134,488 ('488 patent) relating to Thew Shovels. West of Manitowoc then asked Atty. Mayer to review the claim. By letter dated September 28, 1972, Atty. Mayer wrote Beck of Koehring and indicated that his firm had done some consulting work over the years for Manitowoc "in product areas having no known relation to Koehring's business." He also indicated that Manitowoc was aware of Wolfe-Hubbard's pending representation of Koehring in other litigation, and then stated "To my knowledge we have had no prior contacts, and know of no potential contacts, with Thew Shovel or that aspect of the present Koehring business, and therefore, we see no conflict problem—particularly viewed from a practical standpoint."

By letter dated February 12, 1973, Atty. Mayer wrote Beck of Koehring on the subject of Wolfe-Hubbard's prior representation of Koehring:

"In view of the telephone conversation, I have gone back into our files to see what Ross Clark may have done for Koehring on the Thew Shovel patents now asserted against Manitowoc . . . I am enclosing a copy (to you, not Manitowoc) of Ross' June 4, 1964 opinion to Bill Denny on the . . . '837 patent. Aside from copies of 1964 correspondence be-

tween Koehring and Harnischfeger's lawyers, this is all that file contains. In 1969, Harnischfeger sued Koehring and by the end of the year there were several counterclaims . . . involving three Koehring patents including the jib crane '837 and '488 patents. These suits were initially handled by Bill Denny but, in October, 1969, Chuck Walton asked Ross to take over. Some discovery was taken and the cases settled in May of 1970. . . . Interrogatories and their answers in these cases identify and discuss the prior art considered by Ross in 1964 and state that this was the reason for disclaiming in the '837 patent. This is only now coming to light since Ross left our firm about a year ago, you joined Koehring after the May, 1970 settlement, and I had nothing to do with this background. I don't believe this background should preclude our continuing to help resolve the present Koehring-Manitowoc dispute, but we do want the facts to be known to all . . . ."

A letter dated October 16, 1973, from West of Manitowoc to Beck of Koehring indicates that West had received a long opinion from Attorney Mayer on the '837 and '488 patents. In that letter, West stated that he was enclosing copies of the opinions. At page 55 of his opinion to Manitowoc, Attorney Mayer stated:

"*The June 4, 1964 Legal Opinion*
As we noted earlier, on June 4, 1964 our firm rendered a legal opinion to Koehring on the validity and infringement of the Jones et al. patent. Without revealing the contents of the opinion, two points, we think, should be emphasized.

First, to the extent the opinion was favorable to the validity of the patent, this would mitigate against the award of attorney fees against Koehring in the event Koehring were to bring suit and the court were to disagree with our previous opinion. On the other hand, to the extent the opinion is *un*favorable with

---

**2.** Canon 4 of the Code of Professional Responsibilities provides that "A lawyer should preserve the confidences and secrets of a client."

respect to validity, should a court agree with our previous views then Koehring, if it brought suit nonetheless, could well be held to have done so in bad faith; a court, in that case, would very likely award attorneys fees. Otherwise stated, a positive opinion of counsel can be helpful; a negative opinion can end up being very expensive if it is ignored."

On November 27, 1974, Koehring filed its complaint in the present action charging Manitowoc with infringement of the two patents. By letter dated February 4, 1975 from Edward M. O'Toole, counsel for Koehring, to Mayer, O'Toole objected to Mayer's continued representation of Manitowoc now that settlement of the matter had broken down and referred to his view of their agreement that "I would not object to your participation in a settlement conference provided that you would not use that fact against our position." On February 12, 1975, Phillip Mayer, on behalf of Manitowoc filed answer to the complaint. Plaintiff's motion to disqualify was filed March 4, 1975.

Plaintiff Koehring argues that the subject matter in the opinion and prior litigation is the same as that in the present litigation—the validity of patents '837 and '488—and therefore Canon 4 of the Code of Professional Responsibility, which reads "A lawyer should preserve the confidences and secrets of his client," as elaborated upon by the case law, requires disqualification of defendant's counsel.

Defendant Manitowoc has made several arguments. First defendant has argued that the subject matter of the prior and present legal activity are not substantially related and relate to claims in the patents that are not in dispute. Secondly, the defendant argues that it is material that it was Mr. Ross Clark, a former member of the Wolfe-Hubbard firm and now deceased, who worked on the Koehring matter in the 1960's and gave the 1964 legal opinion, and therefore, any confidences which may have been traded are irretrievably gone. Thirdly, defendant contends that plaintiff "sat on its rights," that it was not until December of 1974 that newly retained counsel for Koehring raised the question of Wolfe-Hubbard's representation of defendant Manitowoc, and therefore plaintiff is barred from now asserting its objection by the doctrine of equitable laches. And, lastly, defendant argues that plaintiff has waived its objection to Wolfe-Hubbard's representation of defendant by consenting to that representation.

In *Marketti v. Fitzsimmons*, 373 F.Supp. 637 (W.D.Wis.1974), the court considered a motion for disqualification of counsel and held that members of a local teamsters union who brought suit to dissolve a trusteeship imposed by the international union were entitled to disqualify the law firm which had represented the local from representing the international union. At page 639, the court noted:

"Absent a clear waiver of objection to potential conflicts, the undivided fidelity owed a former client requires disqualification in the subsequent situation whenever the following criteria are satisfied:

. . . (1) The former representation, (2) a substantial relation between the subject matter of the former representation and the issues in the latter lawsuit, and

(3) the later adverse representation." (cites omitted)

The court is satisfied that the three criteria have been met here. Wolfe-Hubbard formerly represented Koehring in the Harnischfeger litigation in matters relating to the validity of the '837 and '488 patents, the same ones involved here. In this action, Wolfe-Hubbard represents Manitowoc and in so doing is now in the position of asserting the invalidity of those same patents against its former client. Thus, the court finds the subject matter of the prior and present litigation, the validity of the '837 and '488 patents to be "substantially related." This court rejects the argument that the decision on this motion should be determined by whether or not the same claims within the patents are at issue.

Defendant's arguments that no confidential information had been received by

Wolfe-Hubbard, and, in the alternative, that even if the firm had received such confidentialities, the firm member who worked with Koehring, is now deceased, are both without merit. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973); *Marketti v. Fitzsimmons, supra* at 639; *American Can v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1975).

■ Defendant's third argument based on a defense of equitable laches, also must fail. Due to public policy considerations, courts generally have been reluctant to apply the doctrine of laches to the disqualification of counsel situation. In *Emle Industries, Inc., supra*, the motion to disqualify had been filed three years after the initiation of the lawsuit, and the court noted, at page 574:

> "Since, as we have noted, disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility."

See also *United States v. Standard Oil Company*, 136 F.Supp. 345, 351 (S.D.N.Y.1955) and *Empire Linotype School v. United States*, 143 F.Supp. 627, 631 (S.D.N.Y.1956). Here, the disqualification motion was filed promptly upon receiving defendant's answer, although plaintiff had been aware since 1972 of Wolfe-Hubbard's representation of Manitowoc. Such a delay does not prevent Koehring from now asserting its motion.

The only question remaining is whether or not Koehring has consented to Wolfe-Hubbard's representation of Manitowoc and has thus waived any objection to that firm's continued representation of Manitowoc in this action. Plaintiff's present counsel conceded in open court that Koehring had been aware of Phillip Mayer's representation of Manitowoc since 1972, and that while the matter was in the pre-litigation settlement phase, Koehring did not object to Wolfe-Hubbard's representation, but that the understanding from the plaintiff's viewpoint was that if the dispute were not settled, then Wolfe-Hubbard would have to discontinue its representation. Andrew J. Beck, Koehring's patent "house counsel," stated in his deposition that such was his understanding of Wolfe-Hubbard's representation of Manitowoc, at pages 40 *et seq.*:

"MR. MAYER: I asked you whether or not it was the fact that subsequent to the September 28th letter your receipt of that, and my letter of November 16th to you, whether or not it was the fact that you told me in words or substance that you would have no objection, that Koehring would have no objection to our firm assisting Manitowoc with respect to the assertion of the patents which are now in suit here.

"MR. BECK: No, I don't believe I said that. To the contrary, it was my impression at the time that you would help the firm—Wolfe, Hubbard and you, personally, Mr. Mayer, would help resolve the matters at hand. To help settle the matters at hand. It was not my impression that you would challenge the validity of the patents in question. But rather would work as you indicated in several of these letters, to resolve the dispute.

Now, there's a difference between your continuing efforts in this for Manitowoc to help resolve the matter, there's a difference between that and an effort on your part to challenge the validity of the patent. Now, insofar as you were going to help resolve the dispute at hand, you had my consent. But at no time would I have given my consent for you to assume a position wherein you challenged the validity of the patent that your firm previously had represented us on, urging the validity of the patent.

MR. MAYER: Well, are you telling us, then, that you do recall and it is the fact that you did tell me that you would have no objection to our representing Manitowoc in an attempt to resolve this assertion of the patents against Manitowoc?

MR. BECK: At any particular date?

MR. MAYER: After September 28th.

MR. BECK: After September 28th I have the specific recollection, after that

period of time, saying to you that if you go into this matter at all, I hope, I assume, I assume you will not go into the Wolfe, Hubbard files on the P&H litigation or the 1964 opinion in our behalf in that matter. And I remember saying that while it's all right while we're still talking about resolving the dispute, it's my recollection that I said, of course, if we ever get into fighting over this, it's not resolved and we ever have to go to court, we have to take a second look at this conflict situation. Now, that's my recollection.

MR. MAYER: When did you tell that to me? In accordance with that recollection?

MR. BECK: Well, on the assumption, where I assumed that you would not go into the files, I told you that prior to 2–12–74.

MR. O'TOOLE: Did you mean '74?

MR. BECK: I'm sorry. I'm sorry, I told you that prior to 2–12–73.

MR. MAYER: You told me not to go into the files, are you saying?

MR. BECK: Yes, I said, I assume you will not. Now, I have a specific recollection of that statement. I assume you won't go into those files.

Now, as a matter of fact, in your next letter, in the 2–12–73 letter, I was disappointed to read right off the top that you have gone into those files. And I was very disappointed in that in this letter. Now, you not only went into the files, but I wouldn't have thought you would have done that. Now, in the shank of the letter you still talk about that—well, let's see if we can't get this thing resolved. And you're still talking let's see if we can't work it out. And at this point I still was assuming that you would not directly challenge the validity, that your firm wouldn't blow hot and cold on the same path, particularly when we're on one end or the other, in a showdown or in litigation on the matter.

MR. MAYER: I gather what you are now telling me that you were somewhat disturbed by this February 12, '73 letter.

MR. O'TOOLE: Disappointed I think was—

MR. BECK: Disappointed. I was disappointed you went into the files when I requested you not to."

The difficulty here seems to be that the parties did not come to a "meeting of the minds" on the subject of Wolfe-Hubbard's representation. Apparently, Wolfe-Hubbard assumed that Koehring's consent to their representation was all-inclusive, whereas Koehring had intended only a limited consent to Wolfe-Hubbard's pursuing a settlement between the parties, both of whom had previously been represented by Wolfe-Hubbard in other matters.

 This court holds that once the movant party establishes the three elements of disqualification of counsel—former representation, a substantial relation between the subject matter of the former representation and the issues in the latter lawsuit, and the later adverse representation—the burden shifts to the party seeking to represent the adverse interest of the prior client to affirmatively show a clear and unequivocal waiver of objection to that representation. That burden cannot rightfully be borne by the former client. In the absence of an unequivocal and clear waiver of objection to potential conflicts, this court cannot permit Wolfe-Hubbard to continue its representation of Manitowoc in these proceedings. Again, the public interest involved dictates that cases of doubt involving representation of interests adverse to former clients on matters substantially related to prior representation of those clients, be resolved in favor of disqualification of counsel. To do otherwise would jeopardize "(t)he stature of the profession and the courts, and the esteem in which they are held, which are dependent upon the complete absence of even a semblance of improper conduct." *Emle Industries, Inc., supra*, at page 575. This court is of the opinion that the burden of obtaining and demonstrating a clear waiver of objection to potential conflicts is properly upon counsel who seek to represent potentially adverse interests of present or former clients.

Under the facts of this case, the court finds that Koehring's consent to Wolfe-Hubbard's representation of Manitowoc for the purpose of settlement negotiations did not constitute a blanket waiver covering the possibility of litigation. Again, in light of the strict prophylactic purposes of Canon 4's injunction to preserve a client's confidences and of Canon 9's injunction to avoid even the appearance of impropriety, the court must grant plaintiff's motion.

THEREFORE IT IS ORDERED that plaintiff's motion to disqualify Wolfe-Hubbard et al. as defendant's counsel in this action be and hereby is granted.