In re NINE WEST DIVISION, INC., Debtor.

William ORSI and Seven West Division, Inc., Plaintiffs,

v.

NINE WEST DIVISION, INC., d/b/a BBC, Defendant.

Bankruptcy No. 86 B 4411.
Adv. No. 86 A 888.

United States Bankruptcy Court, N.D. Illinois, E.D.

July 28, 1987.

Deborah K. Ebner, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

Christopher J. Horvay, Holleb & Coff, Chicago, Ill., for plaintiffs.

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause comes before the Court upon the motion of Defendant Nine West Division, Inc. ("Debtor") to disqualify the law firm of Holleb & Coff and its attorneys from representing William Orsi ("Orsi") and Seven West Division, Inc. ("Seven

West") (collectively, the "Plaintiffs") in both the underlying bankruptcy proceedings and the above-captioned adversary proceeding. For the reasons set forth below, the Court sets this matter for trial on controverted matters pertaining to that Motion.

## FACTS

The parties have not yet offered evidence but rather submitted several affidavits.

Debtor filed affidavits of:

Martin Gutilla ("Gutilla"), president and sole shareholder of Debtor; and

Robert J. Melone ("Melone"), attorney for Gutilla and Debtor.

Plaintiff filed the affidavits of:

William Orsi, president and sole shareholder of Seven West; and

Theodore L. Koenig ("Koenig"), at various times attorney for Orsi, Seven West Debtor and allegedly Gutilla; and

Morris J. Coff ("Coff"), a shareholder of the law firm Holleb & Coff.

The undisputed facts as determined from the affidavits are described below. Likewise, those facts in dispute by the parties are specifically noted.

Prior to June, 1985, Koenig had no relationship of any kind with Debtor, Seven West, Orsi or Gutilla. Beginning in June, 1985, while employed as an associate at the law firm of Winston & Strawn, Koenig represented Orsi in negotiating Orsi's acquisition of partial ownership in Seven West and Debtor. Koenig also represented Orsi in negotiating written leases for the respective properties at which Seven West and Debtor conducted their operations. Those negotiations culminated in the execution of an agreement on July 2, 1985 (the "1985 Agreement").

Pursuant to the 1985 Agreement, Orsi received fifty percent of the shares of stock in both Seven West and Debtor. Gutilla received the other fifty percent of the shares of each corporation.

The parties dispute whether Koenig represented only Orsi during the June, 1985 negotiations. Koenig and Orsi assert that Koenig represented only Orsi. Gutilla attests that Koenig represented Debtor, Seven West, and Gutilla as well as Orsi.

Koenig claims that he told Gutilla that he represented only Orsi and if Gutilla had any interest different from Orsi or any personal concerns he should employ his own counsel. According to Koenig, Gutilla indicated that he had no such concerns and chose not to retain counsel. Gutilla denies that Koenig ever gave such advice.

Subsequent to execution of the 1985 Agreement, Koenig represented both Seven West and Debtor. The parties do not agree as to the scope of Koenig's representation at that time. Koenig and Orsi contend that Koenig represented both corporations for the limited purpose of negotiating with the Internal Revenue Service and the Illinois Department of Revenue to obtain agreements for the payment of certain tax arrearages.

Gutilla attests that the tax matters were only some of Koenig's duties. Gutilla asserts that Koenig also received confidential information regarding the financial and business affairs of Debtor in addition to information relevant to the tax liabilities.

Sometime around September, 1985, Orsi and Gutilla decided that instead of each controlling a fifty percent interest in Debtor and Seven West, they should exchange certain of their respective interests so that Gutilla would be the sole owner of Debtor and Orsi would be the sole owner of Seven West. Negotiations concerning that plan then began.

Koenig alleges that he advised Gutilla that he was Orsi's attorney only and that due to the potential conflict of interest Gutilla should retain counsel if he desired. According to Koenig, Gutilla indicated that he was aware of the risks and chose not to be represented. Gutilla denied that Koenig ever gave such advice.

From September to December, 1985, Koenig participated in the negotiations to exchange shares of stock. Once again, the parties disagree as to the scope of Koenig's representation. Gutilla asserts that Koenig represented Debtor, Seven West, Orsi

and Gutilla. According to Gutilla, Koenig was acting as a counselor rather than an advocate. Koenig and Orsi allege that Koenig represented only Orsi and Seven West.

In early December of 1985, Melone attended a meeting at which were Orsi, Orsi's brother, Gutilla and Koenig. Melone was there on behalf of a potential outside investor in Debtor. It was Melone's understanding that Koenig was acting as attorney for all of the parties.

Subsequent to that meeting, Melone was retained by Gutilla and Debtor for the purpose of representing their interests in working out the exchange agreement. Koenig continued to represent Debtor for the limited purpose of obtaining extensions on the tax matters.

On February 5, 1986, an agreement (the "Exchange Agreement") was executed by Orsi and Gutilla in their capacities as individuals and President of Seven West and Debtor, respectively, whereby Orsi became sole shareholder of Seven West and Gutilla sole shareholder of Debtor. The Exchange Agreement also included a provision concerning the allocation of rents under certain lease agreements. That provision of the Exchange Agreement is in issue in this adversary proceeding.

The circumstances surrounding signing of the February 5, 1986 agreement are in dispute. Melone was not informed of the meeting. Gutilla alleges that Koenig requested him to attend the meeting. Koenig and Orsi assert that Orsi arranged the meeting. Gutilla also alleges that Koenig represented that Melone had approved the terms of the Agreement and that he, Gutilla, relied upon Koenig's representation in signing the Agreement. Koenig contends that Gutilla's actions at the February 5, 1986 meeting belie Gutilla's allegations of misrepresentation.

Shortly after February 5, 1986, Koenig discontinued his representation of Debtor. On February 28, 1986, Koenig left Winston & Strawn and became an associate of the law firm of Holleb & Coff. Koenig brought with him to Holleb & Coff the documents regarding the negotiations of the Agreement. Koenig continues to represent Orsi and Seven West. Koenig has continued in this case to participate actively on behalf of Orsi and Seven West in the dispute with Debtor over the rent provision in the Exchange Agreement. Debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code on March 20, 1986. This original adversary complaint in this case was filed on August 5, 1986.

Between April, 1986 and February, 1987, Debtor, Gutilla and their counsel engaged in numerous settlement discussions with Orsi, Seven West and their attorneys at Holleb & Coff. Koenig was present at every discussion. Settlement discussions broke off on February 16, 1987.

Within ten days after settlement discussions ended, Holleb & Coff was orally requested by Debtor's current counsel to withdraw voluntarily from the representation of Orsi and Seven West. Holleb & Coff declined to do so. On March 2, 1987, Debtor filed the present motion to disqualify Holleb & Coff.

### DISCUSSION

The standard for disqualification of an attorney who undertakes litigation against a former client is the so-called "substantial relationship" test adopted by the Seventh Circuit. *LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 255 (7th Cir.1983); *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221 (7th Cir.1978). The test has been described as embodying the substance of Canon 4 of the A.B.A. Code of Professional Responsibility, which protects the confidences of a client against disclosure and possible use against him, and also Canon 9, which provides that an attorney must avoid even the appearance of impropriety. Thus, the question before a court considering a motion for disqualification is whether it could reasonably be said that during the former representation the attorney might have acquired information substantially related to the subject matter of the subsequent representation, *LaSalle,* 703 F.2d at 255. If a substantial relationship is found, it is unnecessary for the movant to prove that the attorney in

question actually received during the course of his formal employment confidential information relevant to matters involved in the subsequent representation. *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266–67 (7th Cir.1983). The question before this Court, therefore, is not whether Koenig received any specific information relevant to the present litigation during any representation of Debtor, but whether there is a substantial relationship between the subject matter of any prior and the present representation.

The Seventh Circuit has directed that a three-level inquiry be undertaken in order to determine if such a substantial relationship exists. First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *Westinghouse,* 588 F.2d at 225. After evaluating the facts of this case according to this three-part standard, if the Court finds that such a substantial relationship did exist, there arises a rebuttable presumption that the attorney received confidential information during his prior representation. *LaSalle,* 703 F.2d at 256.

In this case, the parties dispute the threshold issue: the scope of Koenig's prior representation of Debtor. Affidavits cannot resolve that dispute. Therefore, the Court is presently unable to properly conduct the three-step inquiry to determine whether a substantial relationship exists between prior and present representations. Accordingly, an evidence hearing will be held solely on this motion to disqualify.

Plaintiffs contend the "substantial relationship" rule cannot apply in this case. The rule rests upon the presumption that confidences potentially damaging to the

client have been disclosed to the attorney during the former period of representation. According to Plaintiffs, this presumption cannot apply here because there could be no confidences as Orsi already knew all of the facts about financial condition of both corporations from negotiations concerning the Exchange Agreement.

However, the parties dispute as to who managed the business of Debtor. Gutilla asserts he managed the actual running of the business and that Orsi was not present during business hours. Orsi alleges Gutilla took no active role in the management of Debtor and that it was he, Orsi, who took care of the financial end of the business. Based on the present record, the Court cannot say Orsi was aware of every confidence concerning Debtor passed on to Koenig by Gutilla.

Moreover, Plaintiffs' argument interprets too narrowly an attorney's duty to preserve the confidences and secrets of a client. This ethical precept exists "without regard to the nature or source of information or the fact that others share the knowledge," ABA Code of Professional Responsibility, EC 4–4 (1978).[1] Information acquired during the attorney-client relationship is sheltered from use by the attorney against his client and this is true without regard to whether someone else may be privy to it. *Brennan's, Inc. v. Brennan's Restaurant's, Inc.,* 590 F.2d 168, 172 (5th Cir.1979). Therefore, the need to safeguard the attorney-client relationship by possible disqualification is not diminished by the fact that the prior representation may have been joint with the attorney's present client. Accordingly, the Court finds the "substantial relationship" rule fully applicable to this case. *Brennan's,* 590 F.2d at 172.

Plaintiffs also argue that Debtor waived any right it may have had to object to Holleb & Coff's representation of Orsi and Seven West by failing to object until more than a year-and-a-half after Melone began representing Debtor. According to Plain-

1. The present ABA Rules of Professional Conduct 1.6 provides that "a lawyer shall not reveal *information* relating to representation of a client unless the client consents after consultation." (Emphasis added).

tiffs, any conflict of interest should have been apparent in December, 1985 and yet Debtor never objected to Koenig's representation of Orsi and Seven West until settlement negotiations broke down in February, 1987.

■ The Seventh Circuit has indicated that a client's consent will not justify the use of confidential information against the client. *See Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 228 (7th Cir.1978). Whether this rule applies to non-confidential information is unclear. However, there is also authority for the proposition that a former client's consent to a lawyer's representation of an adverse party on a matter substantially related for the sole purpose of settlement negotiations does not necessarily constitute a waiver of the right to object to the lawyer's representing the adverse party in litigation. *See Koehring Co. v. Manitowic Co., Inc.*, 418 F.Supp. 1133 (E.D.Wisc.1976). That is not a *per se* rule but rather places the burden on the lawyer to show a clear and unequivocal waiver of objection to potential conflicts for all purposes. *Id.* at 1138–39. No such waiver has been demonstrated by the continued representation without objection during settlement discussions. *Koehring, Id.* Nor has it otherwise been demonstrated by affidavits.

Finally, Debtor contends that Holleb & Coff should be disqualified because Koenig may be called as a witness. If an attorney ought to be called as a witness to testify to any controverted matter, then the attorney shall withdraw from the conduct of the trial. *May's Family Centers, Inc. v. Goodman's Inc.*, 590 F.Supp. 1163 (N.D.Ill.1984). The parties dispute whether any matters Koenig may testify to are controverted.

As the Court noted in *May's*, this issue is one that must first be illuminated by Debtor and its counsel in light of all the fact issues and their contemplated trial strategy. *May's*, 590 F.Supp. at 1165 n. 7. Therefore, this Court will adopt procedure used by the District Court in *May's*. Disqualification under the attorney-as-witness rule is not mandated at this stage of the adversary proceeding, whereas there is a need to determine Holleb & Coff's possible disqualification under the substantial relation rule.

A pretrial has not yet been held in the underlying litigation and the parties have not concluded framing the issues involved therein. If it is hereafter determined that Koenig ought to testify at trial to any controverted matter, he and his firm will be disqualified from representing Orsi and Seven West in this matter. Apart from the question of Holleb & Coff's possible disqualification under the substantial relationship rule, if Koenig will be testifying to truly uncontroverted matters, or if it later becomes clear he need not testify at all, then he and his firm will not be disqualified on witness grounds.

Holleb & Coff argues that in light of its long-standing relationship with Orsi, its involvement with this litigation from the beginning and financial hardship to the client, disqualification would work a substantial hardship on its client. Courts that have considered the question have not found "distinctive value" or great merit in arguments about long-standing relationships with the client, involvement in the litigation from its inception, or financial hardship to the client. *See May's*, 590 F.Supp. at 1165. Holleb & Coff's reasons in that regard do not meet the tests earlier described. Disqualification at this early stage in the case would not be a substantial hardship on the Plaintiff clients merely because of "the distinctive value of the lawyer or his firm as counsel in the particular case." ABA Code of Professional Responsibility DR 5–101(B)(4) as incorporated by DR 5–102. The ethical principles addressed are of such significance that where applicable they must be observed in advance so clients will not incur unnecessary expense, inconvenience or detriment. When disqualification is later mandated, some adverse consequences will usually flow to the client. No unusual consequences to the client have been demonstrated here. It is the responsibility of attorneys to avoid placing their clients in the position of being hurt by a successful disqualification motion.

## CONCLUSION

This matter is therefore set for hearing on *October 5th and 6th, 1987* at *2:00 P.M. each day* to take evidence as to Debtor's motion to disqualify Holleb & Coff. A separate Pretrial Order is entered this date concerning that hearing.

Though the great effort and resources devoted by the parties to this issue will only serve interests peripherial to issues in the main litigation, this question must be decided before the underlying case proceeds further.