Vernon R. BERG, Sr., Plaintiff-Appellant,

v.

The MARINE TRUST COMPANY, N.A., Berg
Engineering, Inc., Berg Hydro-Man, Inc.,
Simplex, Inc., Farmway Co., Inc., Wilber
Equipment Corporation, Berg & Berg, Inc.,
Berg Equipment Company, Berg Industries,
Inc., Richard G. Hugo and Vernon R. Berg,
Jr., Defendants-Respondents.

Court of Appeals

*No. 86–2100. Argued August 25, 1987.—Decided October 8, 1987.*

(Also reported in 416 N.W.2d 643.)

For the plaintiff-appellant there were briefs by *Earl H. Munson* and *Janet L. Kelly* and *La Follette & Sinykin* of Madison, and *John E. Shannon, Jr.* and *Anderson, Shannon, O'Brien, Rice & Bertz,* of Stevens Point, and oral argument by *Janet L. Kelly.*

For the defendants-respondents there was a brief by *Francis J. Podvin* and *Richard D. Weymouth,* and *Nash, Podvin, Detlefsen, Tuchscherer & Weymouth, S.C.,* of Wisconsin Rapids, and oral argument by *Francis J. Podvin.*

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   We granted Vernon Berg, Sr., leave to appeal from an order denying his motion to disqualify the law firm retained by the respondents Berg Industries, Inc., and Farmway Co., Inc. The issue is whether the trial court abused its discretion in declining to disqualify the firm. We conclude that there was an abuse of discretion and reverse.

Berg commenced this shareholder's derivative action in January, 1986, naming Berg Industries, Farmway, and several other corporations and individuals, including his son, Vernon, as defendants. The complaint alleged, *inter alia,* that the board of directors of Berg Industries had permitted Vernon to "siphon" assets from the corporation and move them to his own businesses. Berg Industries and Farmway answered the complaint, appearing by Francis Podvin of the law firm of Nash, Podvin, Detlefsen, Tuchscherer & Weymouth.

Berg moved to disqualify the Nash law firm on grounds that one of the firm's partners had represent-

ed him in a 1983 dispute with Vernon involving the Berg family corporations, including Berg Industries. The motion was accompanied by an affidavit in which Berg asserted that the firm's services to him in 1983 related to Vernon's efforts to remove him (Berg) as an officer and director of Berg Industries and other family corporations and related family trusts, and that these matters were "directly related" to his claim in this action that Vernon has been diverting assets from one of the corporations to his own use.

The court held an evidentiary hearing on the motion, and the material facts are not in dispute. In 1961, Berg transferred the assets of several manufacturing companies and other properties to a family trust. Under the terms of the trust, Berg served as a trustee and continued in his position as chief executive officer of the several corporations. Attorney Larry Chambers, a member of the Nash law firm, was Berg's attorney at the time, representing Berg personally, as well as the various Berg companies. He continued in this capacity until July 7, 1983.

In early 1983, Vernon, who, together with Berg's other children and grandchildren, was a beneficiary of the trust, filed a petition to amend the trust to remove Berg as trustee and head of the corporations. Although Berg was not notified of the petition and did not appear in the proceedings, the court entered an order on May 12, 1983, removing him from his trust and corporate offices. Berg first learned of the existence of the petition when Vernon presented him with the court's order on May 13, 1983.

Berg immediately contacted Chambers and consulted with him about the case and other matters relating to the intrafamily disputes. The law firm's records indicate billings to Berg for approximately

forty hours of legal services from May 13 to July 7, 1983, when Chambers informed Berg that he could no longer represent him because of a "possible conflict of interest." Up until that time Chambers was, in Berg's words, his "major attorney."

Chambers acknowledged that he had represented Berg and the several family companies for many years. He testified that he felt he did not want to represent either Berg or Vernon in the 1983 "removal" proceedings because "having known them both ... [he] would not feel comfortable representing either one." After Berg consulted with him about the case, Chambers suggested that he retain another attorney, Earl Munson, to handle the representation. However, Chambers continued to participate with Munson in the matter until he formally resigned as Berg's attorney on July 7, 1983. Even thereafter, into November, he was billing Berg for his services in attempting to settle the ongoing dispute between Berg and Vernon. Finally, he stated that he "didn't think" he talked to his partner, Francis Podvin (the lawyer now representing Berg Industries and Farmway), about the dispute, or that "any confidence[ ] of any kind ... was exchanged" between them. Chambers retired from the firm in 1985.

Berg commenced this action in January, 1986, seeking an accounting of all transactions between Vernon (and the companies under his control) and Berg Industries. The complaint recited Vernon's 1983 efforts to remove Berg from his trust and corporate offices and alleged that Vernon had been diverting money and other assets from Berg Industries. As indicated, Berg Industries retained the Nash firm to represent it, and Berg petitioned for disqualification. The trial court denied the petition, concluding that

Berg had failed to establish a "substantial relationship" between Chambers's representation of Berg prior to July 7, 1983, and the firm's representation of Berg Industries in this action.

There are few Wisconsin cases on the subject of disqualification of an attorney on grounds that he or she has undertaken representation of a client whose interests are adverse to those of a former client, and none has adopted a methodology for determining when disqualification is appropriate. In *Ennis v. Ennis,* 88 Wis. 2d 82, 276 N.W.2d 341 (Ct. App. 1979), we held that an attorney who represented the wife in a postjudgment divorce proceeding, where another member of his law firm had represented the husband in the original action, was guilty of "a serious breach of the Code of Professional Responsibility" and should be disqualified. *Id.* at 98, 276 N.W.2d at 347. Noting that the attorney's conflict of interest was "obvious," *id.* at 99, 276 N.W.2d at 348, we did not discuss the matter further.

In *City of Whitewater v. Baker,* 99 Wis. 2d 449, 299 N.W.2d 584 (Ct. App. 1980), an attorney represented Baker in connection with his purchase of real estate, drafting the deed, and providing related services. A few years later, Baker became involved in a dispute with the city over the widening of an adjoining street. He brought an action to declare his interest in the property and was promptly sued by the city to force removal of several alleged encroachments on the street right-of-way. Baker's former lawyer represented the city in both actions, and we held that the trial court erred when it declined to disqualify him. We noted that a court need not find that the attorney has actually engaged in unethical conduct or disclosed the former client's confidences in order to be disqualified

on grounds of conflict of interest. All that is required is that "the attorney has undertaken representation of a client whose interests are adverse to those of the former client." *Id.* at 453, 299 N.W.2d at 586. This is so, we said, because "[a]ttorneys are obligated to avoid even the appearance of impropriety." *Id.; Ennis,* 88 Wis. 2d at 98–99, 276 N.W.2d at 348.

In *Whitewater,* 99 Wis. 2d at 455, 299 N.W.2d at 587, as in *Ennis,* the conflict was "obvious," and we were not called upon to analyze the facts under any particular test for disqualification. The *Whitewater* opinion does, however, acknowledge the existence of two tests for disqualification based on inconsistent or adverse representations. One test was said to be whether the new employment will require the attorney to do anything "that will injuriously affect a former client in any matter in which he formerly represented him and also whether the attorney will be called on ... to use against a former client any knowledge or information acquired in the former relationship." *Id.* at 454, 299 N.W.2d at 587, citing 7 Am. Jur. 2d *Attorneys at Law,* sec. 156, p. 140 (1963) [now sec. 186, pp. 238–39] (footnote omitted). The *Whitewater* court also referred to a "federal" test for inconsistent employment—"whether a 'substantial relation' exists between the subject matter of the former representation and the issues in the later adverse representation," *id.* at 454–55 n. 1, 299 N.W.2d at 587—and suggests that the attorney would have been subject to disqualification under either standard because his subsequent representation was "obviously adverse" to his representation of the former client. *Id.* at 455, 299 N.W.2d at 587.

In this case the parties argued, and the trial court applied, the "substantial relationship" test. The test

has been applied in every federal circuit for more than thirty years,[1] and in most state courts as well.[2] Because we believe it to be the appropriate test to be utilized in attorney disqualification cases, we adopt and apply it here.

■

Simply stated, the test is as follows: "where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related.'" *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d

[1]*See,* Silverstein, "Attorney Disqualification for a Conflict of Interest in Federal Civil Litigation: A Confusing Body of Law in Need of Organization," 30 Vill. L. Rev. 463, 479 (1985).

[2]*Goldthwaite v. Disciplinary Bd., Etc.,* 408 So. 2d 504, 509 (Ala. 1982); *Rodriguez v. State,* 628 P.2d 950, 955 (Ariz. 1981); *Grove v. Grove Valve and Regulator Company,* 29 Cal. Rptr. 150, 153 (Ct. App. 1963); *State v. Jones,* 429 A.2d 936, 939–40 (Conn. 1980), *aff'd,* 475 A.2d 1087 (1984), *overruled in part, State v. Powell,* 442 A.2d 939, 944 (Conn. 1982); *Toole v. I.T.T. Grinnell Corp.,* 275 S.E.2d 97, 99 (Ga. App. 1980); *Finch v. Wallberg Dredging Company,* 322 P.2d 701, 703 (Idaho, 1958); *People v. Drysdale,* 366 N.E.2d 394, 397 (Ill. App. 1977); *State v. Tippecanoe County Court,* 432 N.E.2d 1377, 1378 (Ind. 1982); *Rollo v. Dison,* 402 So. 2d 122, 126–27 (La. App. 1981); *Gillett v. Gillett,* 257 N.W. 719, 720 (Mich. 1934); *Butler Bros. Development Co. v. Butler,* 108 P.2d 1041, 1052 (Mont. 1941), *overruled in part, Gray v. City of Billings,* 689 P.2d 268, 272 (Mont. 1984); *Reardon v. Marlayne, Inc.,* 395 A.2d 255, 257–58 (N.J. Super. 1978), *aff'd,* 400 A.2d 490 (1979); *United Nuclear Corp. v. General Atomic Co.,* 629 P.2d 231, 319 (N.M. 1980), *cert. denied,* 451 U.S. 901, *reh'g denied,* 452 U.S. 932 (1981); *Tinkle v. Ravena Development Corp.,* 400 N.Y.S.2d 393, 394 (1977); *White Motor v. White Consolidated Industries,* 395 N.E.2d 1340, 1344–45 (Oh. App. 1978); *Lott v. Ayres,* 611 S.W.2d 473, 474–75 (Tex. Civ. App. 1980); *Burns v. Norwesco Marine, Inc.,* 535 P.2d 860, 862 (Wash. App. 1975).

221, 223 (7th Cir. 1978). The rule is said to "embod[y] the substance of Canons 4 and 9 of the A.B.A. Code of Professional Responsibility," which requires lawyers to "preserve the confidences and secrets of a client," and to "avoid ... even the appearance of professional impropriety." *Id.* at 224. Both canons have been adopted in Wisconsin. *See* SCR 20.21 and 20.48 (1986).

In this case, Podvin, the present "adverse" attorney, was not himself involved in the earlier representation, and the lawyer who was, Chambers, is no longer with the firm. But these facts are irrelevant to the disqualification issue, for a client of a law firm is "entitled to insist that any member of that firm protect his confidences and avoid any act which might adversely affect the very interests it had been engaged to protect." *Ennis,* 88 Wis. 2d at 100, 276 N.W.2d at 348 (footnote omitted).

> [A] lawyer may not represent an adversary of his former client if the subject matter of the two representations is "substantially related," which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client, or whether—if the lawyer is a firm rather than an individual practitioner—different people in the firm handled the two matters and scrupulously avoided discussing them. *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir. 1983).[3]

---

[3]The *Analytica* court went on to mention an exception to the rules just quoted. In a case where a member or employee of the law firm (or government legal department) changes jobs and his or her new firm is retained by an adversary of a client of the former

■
While disqualification is the primary means of assuring that the ethical canons are not violated, a party to litigation also has an important interest in being represented by the counsel of his or her choice. As a result, disqualification "ought not be applied so indiscriminately as to undercut this interest without justification." *Moritz v. Medical Protective Co., Etc.*, 428 F. Supp. 865, 874 (W.D. Wis. 1977).

■
The trial court "possesses broad discretion in determining whether [attorney] disqualification is required in a particular case, and the scope of our review is limited accordingly." *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir. 1976). Generally, we will not find an abuse of discretion if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the trial court's decision. *Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274, 276 (1977). However, "we have never hesitated to reverse discretionary determinations where the exercise of discretion is based on an error of law." *State v. Wyss*, 124 Wis. 2d 681, 734, 370 N.W.2d 745, 770 (1985).

In this case, while the trial court held a hearing on the motion, the testimony taken—that of Berg, Chambers, and Podvin—was not in material conflict.

---

firm, the lawyer can avoid disqualification—even if there is a substantial relation between the two matters—by showing that effective measures were taken to prevent the former client's confidences from being shared with whichever lawyers in the new firm are handling the new matter. *See Novo Terapeutisk, Etc. v. Baxter Travenol Lab.*, 607 F.2d 186, 197 (7th Cir. 1979) *(en banc)*. As in *Analytica*, the *Novo* exception is inapplicable here because "the firm itself changed sides." *Analytica*, 708 F.2d at 1267.

In *Novo Terapeutisk, Etc. v. Baxter Travenol Lab.*, 607 F.2d 186, 197 (7th Cir. 1979), a lawyer disqualification case, the trial court relied solely on affidavits and thus, as is the case here, there were no factual issues and no questions of witness credibility. The court of appeals stated that "[u]nder such circumstances, [trial] courts enjoy no particular advantage over appellate courts in their formulation of ethical norms." *Id.* at 189.[4] *See also State ex rel. Brennan v. Branch 24 of Cir. Ct.*, 104 Wis. 2d 72, 76, 310 N.W.2d 629, 631 (Ct. App. 1981) (trial court's conclusion that conflict of interest existed was error of law and thus an abuse of discretion).

In this case, the trial court determined that, "at least at the onset ... Chambers was acting as [Berg's] attorney" in the spring of 1983. We agree with that determination. We note first that there is no question that the law firm had represented Berg for many years. Chambers had been his personal and business attorney since at least 1961. Beginning in early May, 1983, Berg consulted with Chambers in his attempts to resist Vernon's efforts to remove him as trustee of the family trust and executive officer of Berg Industries and the other family corporations. Chambers provided legal advice and conferred with Berg and Berg's other attorney, Earl Munson, who continued to represent Berg in the removal litigation after Chambers resigned in July, 1983. Chambers was representing Berg in May and June and beyond. It was an attorney-client relationship, and there is no doubt

---

[4]The quotation is from the panel decision. *Novo* was reheard by the court *en banc,* and the result was reversed. However, the *en banc* opinion neither withdraws nor restates the panel's discussion on the scope of review.

that the law firm's representation of Berg Industries and Farmway in the present action is adverse to Berg's interests, for he is suing them for an accounting, injunctive relief, and damages.

The question, then, is whether the subject matter of Chambers's former representation of Berg is substantially related to the subject matter of the firm's representation of the corporations in this action. The trial court ruled that it was not. We believe that to be an erroneous application of the law and thus an abuse of discretion warranting reversal. *Wyss,* 124 Wis. 2d at 734, 370 N.W.2d at 770.

A substantial relationship will be found to exist "if the factual contexts of the two representations are similar or related." *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir. 1985), quoting *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983). *See also Trone v. Smith,* 621 F.2d 994, 998 (9th Cir. 1980), where the court stated:

> The interest to be preserved by preventing attorneys from accepting representation adverse to a former client is the protection and enhancement of the professional relationship in all its dimensions. It is necessary to preserve the value attached to the relationship both by the attorney and by the client. These objectives require a rule that prevents attorneys from accepting representation adverse to a former client if the later case bears a substantial connection to the earlier one. Substantiality is present if the factual contexts of the two representations are similar or related. [Citation omitted.]

Only where we can clearly discern "that the issues involved in [the] current case do not relate to

matters in which the attorney formerly represented the adverse party will the attorney's present representation be treated as measuring up to the standard of legal ethics." *Westinghouse Elec. Corp.,* 588 F.2d at 224, quoting *Fleischer v. A.A.P., Inc.,* 163 F. Supp. 548, 553 (S.D. N.Y. 1958). And in answering such questions, "[d]oubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification." *Westinghouse Elec. Corp.* at 225.

Vernon's 1983 suit to oust Berg as head of the trust and the family corporations was one of several legal disputes—many of them still continuing—between Berg and Vernon over control of the family fortunes. Our other decisions in related Berg family cases issued contemporaneously with this opinion offer a glimpse of the nature and intensity of these intrafamily battles. This action is part of the package; it is a lawsuit by Berg to enjoin Vernon from acting in a manner felt to be detrimental to family business interests. And we note that Chambers acknowledged in his testimony that some of the services he rendered for Berg in 1983 consisted of attempts to settle all of the ongoing disputes between Berg and Vernon. We are satisfied that, considering the factual contexts of the two representations, they are sufficiently similar or related to meet the substantial relationship test, and that the trial court erred as a matter of law in concluding otherwise.

Public trust is essential to the healthy functioning of the legal system. Indeed, the need to maintain that trust forms the basis for one of the ethical canons underlying the substantial relationship test: that lawyers should avoid "even the appearance of professional impropriety." SCR 20.48 (1986). We agree with

Judge Doyle's observation that a lawyer's representation of an interest adverse to that of a former client in a matter substantially related to that involved in the former representation "would seem a breach of trust to the lay sense of justice," and that proof that no confidential information actually had been disclosed "would not remove the taint of disloyalty." *Marketti v. Fitzsimmons,* 373 F. Supp. 637, 639 (W.D. Wis. 1974).[5]

[5]The heart of the substantial relationship test is the presumption that a client will disclose confidences to his or her attorney. While there is language in some federal cases to the contrary, the presumption is considered irrebuttable because of the impropriety of testimonial inquiry into conversations between attorney and client to determine whether actual confidences were disclosed. *Analytica,* 708 F.2d at 1269. *See also Novo,* 607 F.2d at 191–92 (*en banc*) (the rule "clearly contemplates an irrebuttable presumption").

Respondents, arguing from *Schiessle v. Stephens,* 717 F.2d 417 (7th Cir. 1983), that in cases such as this, where different attorneys are involved, we must also consider whether the first attorney actually shared with the present "adverse" attorney any confidences gleaned from the earlier representation. They argue that Chamber's testimony that he "didn't think" he disclosed any client confidences to Podvin requires dismissal of the petition. We agree with Berg that *Schiessle* is unpersuasive. First, we note that the opinion has been criticized as being unsupported by the very cases on which it relies. *See* Silverstein, "Attorney Disqualification for a Conflict of Interest in Federal Civil Litigation: A Confusing Body of Law in Need of Organization," 30 Vill. L. Rev. 463, 489 (1985). Second, as we have noted, *supra* note 2, the "exception" to the substantial relationship rule which allows the second lawyer to avoid disqualification by showing that measures were taken to ensure that he received no client confidences from the first attorney, is inapplicable to a case such as this, where "the firm itself [not the lawyer] changed sides." *Analytica,* 708 F.2d at 1267. Indeed, in *Schiessle* the firm did not change sides, the lawyer simply changed jobs, leaving the firm representing one party to join the firm representing the other. The *Schiessle* panel itself

We agree with respondents' suggestion that an attorney's (or a law firm's) acceptance of employment to act in opposition to a former client is not by itself improper, and that only where the subsequent representation is adverse to that involved in the former may disqualification be appropriate. But, as we have said, disqualification does not require a finding that any breach of ethical standards or client confidences has occurred, but only that the attorney has undertaken to represent a client whose interests are adverse to those of a former client. *City of Whitewater,* 99 Wis. 2d at 453, 299 N.W.2d at 586. Nor is identity of counsel required, for the client has a right "to insist that any member of the firm ... avoid any act which might adversely affect the very interests it had been engaged to protect." *Ennis,* 88 Wis. 2d at 100, 276 N.W.2d at 348 (footnote omitted).

Because the trial court's conclusion that there was no substantial relationship—no conflict of interest—between the two representations is an error of law, it acted "beyond the limits of its discretion." *State ex rel. Brennan,* 104 Wis. 2d at 76, 310 N.W.2d at 631.

*By the Court.*—Order reversed.

---

recognized the *Analytica* holding and distinguished the cases on that basis.

Finally, *Analytica* is consistent with the Wisconsin rule that the client is entitled to insist that all members of a law firm, not just an individual attorney, avoid any acts adverse to the client's interests. *Ennis,* 88 Wis. 2d at 100, 276 N.W.2d at 348.