COURT OF APPEALS
DECISION
DATED AND FILED

June 23, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1182**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV824

IN COURT OF APPEALS
DISTRICT III

---

ROBERT B. GERBERS AND BETTY J. GERBERS,

PLAINTIFFS-RESPONDENTS,

V.

RICHARD J. OTRADOVEC, RODAC, LLC AND ASH INVESTORS, LLC,

DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Richard J. Otradovec, RODAC, LLC, and Ash Investors, LLC,[1] appeal from a nonfinal order denying their motion to disqualify the law firm DeWitt LLP from representing Robert B. Gerbers and Betty J. Gerbers in this case.[2]  For the reasons explained below, we reject the Gerbers' argument that this appeal is moot, and we agree with the Otradovec defendants that the circuit court erroneously exercised its discretion by denying their disqualification motion.  We therefore reverse and remand for the court to enter an order disqualifying DeWitt from representing the Gerbers.  On remand, the court must also determine which documents constitute confidential, privileged, or work-product materials that should be subject to a protective order.  The court must then enter a protective order prohibiting further use of those materials in this case and requiring the Gerbers' counsel to return or destroy those materials and to certify that they have done so.

## BACKGROUND

¶2     This lawsuit arises from a series of commercial transactions that began in 2012, in which the Gerbers and Otradovec collaborated in attempting to develop certain property in Brown County, Wisconsin.  Based on the allegations in the Gerbers' complaint, these transactions essentially fell into two general categories.

---

[1] We refer to Richard J. Otradovec, RODAC, LLC, and Ash Investors, LLC, collectively, as the Otradovec defendants.  Where necessary, we refer to Richard J. Otradovec, individually, as Otradovec.

[2] We granted the Otradovec defendants' petition for leave to appeal the circuit court's nonfinal order on July 8, 2025.  *See* WIS. STAT. RULE 809.50(3) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

¶3      First, the Gerbers' complaint alleges that between 2012 and 2014, Otradovec purchased real property (the Property) from the Gerbers, obtained additional investments from the Gerbers and other investors in the Property, obtained an assignment from the Gerbers of an option to purchase additional real estate, and secured building permits for the construction of businesses on the Property, including a business called Harbor Wealth Management LLC.[3]  The Gerbers further allege that during this time period, Otradovec formed SA Investors, LLC, and caused the Harbor Wealth parcel to be transferred from Ash Investors to SA Investors.  Attorney Kathryn Blom, who was then employed by Epiphany Law, LLC, represented the Otradovec defendants in connection with these transactions.

¶4      Second, between 2015 and 2021, Otradovec allegedly transferred assets to, or accepted assets from, third parties in a number of other transactions related to the development of the Property.  For the purposes of this appeal, it is undisputed that Attorney Blom did not act as the Otradovec defendants' attorney with respect to these additional transactions.

¶5      On June 28, 2023, the Gerbers—represented by Attorney Shawn Govern of DeWitt—filed the instant lawsuit against the Otradovec defendants in Brown County Circuit Court, alleging various forms of bad conduct on Otradovec's part in connection with the development of the Property and asserting 25 state and federal claims.  Many of the Gerbers' allegations involved transactions that occurred after 2014, when Attorney Blom was no longer

---

[3] According to the Gerbers' complaint, RODAC, LLC, is Otradovec's "solely owned construction and development company," and Otradovec formed Ash Investors, LLC, "to acquire the Property."

3

representing the Otradovec defendants. However, the complaint also faulted Otradovec for transferring the Harbor Wealth parcel from Ash Investors to SA Investors in 2014, when Attorney Blom was still acting as a transactional attorney for the Otradovec defendants.

¶6 The Otradovec defendants retained attorneys David Weber and Christina Sommers of the law firm Conway, Olejniczak, & Jerry, S.C., to represent them in this lawsuit. Attorneys Weber and Sommers actively consulted with Attorney Blom, who was by then employed by Amundsen Davis LLC, regarding the development of a litigation strategy for this case.

¶7 In July 2023, the Otradovec defendants removed this lawsuit to federal court. In July 2024, DeWitt subpoenaed records from Attorney Blom and Amundsen Davis. In responding to the subpoena, Amundsen Davis inadvertently produced what the Otradovec defendants contend are privileged and confidential communications and/or work product materials, including communications between Attorney Blom and Attorneys Weber and Sommers, as well as draft versions of transactional documents from Attorney Blom's file. For example, Amundsen Davis produced a draft offer to purchase the Harbor Wealth parcel for $190,000. Otradovec ultimately sold the Harbor Wealth parcel to SA Investors for only $153,000.

¶8 Attorneys Weber and Sommers were not copied on the subpoena to Attorney Blom and Amundsen Davis, nor did they receive copies of the materials that were produced in response to the subpoena. DeWitt subsequently relied on the draft offer to purchase the Harbor Wealth parcel during summary judgment proceedings in federal court. Attorneys Weber and Sommers then notified Attorney Blom that her firm "appeared to [have] inadvertently produce[d]

privileged materials" in response to the Gerbers' subpoena. On November 6, 2024, Attorney Blom filed a sworn declaration in federal court asserting that her firm had inadvertently produced privileged materials and "requesting that all copies of inadvertently produced privileged and work product material be returned to [her] promptly."

¶9 On January 29, 2025, the federal court dismissed the Gerbers' federal claims with prejudice and remanded the Gerbers' state law claims to state court. The federal court did not resolve the parties' dispute regarding the materials that were inadvertently produced by Amundsen Davis.

¶10 In the meantime, on December 16, 2024, Attorney Blom left Amundsen Davis and joined DeWitt. DeWitt asserts that it "put a screen in place on December 13, 2024, prior to Attorney Blom joining the firm."

¶11 On February 10, 2025, after learning that Attorney Blom had joined DeWitt, Attorney Sommers wrote to DeWitt asserting that it was disqualified from further representation of the Gerbers in this matter "due to the unavoidable conflict of interest arising from Attorney Blom's prior representation of Defendants." After receiving no response from DeWitt, the Otradovec defendants filed a motion in the circuit court on March 11, 2025, seeking to disqualify DeWitt from representing the Gerbers.

¶12 The Otradovec defendants advanced two grounds for DeWitt's disqualification. First, the Otradovec defendants argued that Attorney Blom was disqualified from representing the Gerbers under SCR 20:1.9 because she had formerly represented the Otradovec defendants in a "substantially related matter," and Attorney Blom's disqualification was imputed to the entire DeWitt firm under SCR 20:1.10. Second, the Otradovec defendants contended that Attorney Blom

was disqualified from representing the Gerbers under SCR 20:1.7 because the Otradovec defendants were Attorney Blom's current clients, based on Attorney Blom's consultations with Attorneys Weber and Sommers regarding the litigation strategy for this case. Again, the Otradovec defendants argued that this disqualification was imputed to the entire DeWitt firm under SCR 20:1.10.

¶13 Following briefing and oral argument, the circuit court denied the Otradovec defendants' motion to disqualify DeWitt in an oral ruling. The court provided four reasons in support of its decision. First, the court stated that in "the world we live in now, people … go from job to job," and "there cannot be a chill." The court further explained that "in this economy," people "have to be able to move from company to company, firm to firm," and the court's "underlying philosophy" is that "people need to find jobs for their particular situation."

¶14 Second, the circuit court stated that the Gerbers "have the right … to employ the counsel they want." The court also noted that "[t]his file is very developed" and that DeWitt had expended "a lot of time" on the litigation.

¶15 Third, the circuit court concluded that disqualification was not required under SCR 20:1.9 because Attorney Blom's prior representation of the Otradovec defendants did not constitute "the same matter" or a "substantially related matter." The court explained, "If [Attorney Blom] acted as a counsel, that's one thing. She did not act as a financial advisor, she did not act as the owner, she did not act as the person that was or is going to set a price on a particular thing of real estate."

¶16 Fourth, the circuit court rejected the Otradovec defendants' argument that disqualification was required under SCR 20:1.7 because the Otradovec defendants were Attorney Blom's current clients. In support of that

conclusion, the court expressed disbelief that either Attorney Weber or Attorney Sommers would "disclose [their] litigation strategy to someone over the telephone or even in person-to-person."

¶17 The circuit court subsequently entered a written order denying the Otradovec defendants' motion to disqualify DeWitt from representing the Gerbers. The order also stated, however, that the "internal screen in place between Attorney Govern, his litigation team and Attorney Blom at [DeWitt] shall continue until further court order or until the litigation is resolved."

¶18 As noted above, on July 8, 2025, this court granted the Otradovec defendants' petition for leave to appeal the circuit court's nonfinal order denying their motion to disqualify DeWitt. We also stayed further proceedings in the circuit court pending appeal. Thereafter, on September 3, 2025, the Gerbers filed a "Stipulation for Substitution of Counsel" in the circuit court, stating that they consented "to the substitution of Joseph L. Olson of Michael Best & Friedrich LLP in place of Shawn M. Govern, of DeWitt LLP, as attorneys of record for" the Gerbers. The Gerbers also filed a proposed order for substitution of counsel. The circuit court held the proposed order in abeyance pending this court's resolution of the instant appeal.

¶19 The Gerbers subsequently filed a motion in this court seeking to remand this case to the circuit court "for the limited purpose of entering the Gerbers' Proposed Order for Substitution." In support of their motion, the Gerbers argued that "DeWitt's withdrawal as counsel in this action renders Otradovec's appeal moot as to his challenge to the Circuit Court's disqualification order." We denied the Gerbers' motion for remand by order dated January 7, 2026, noting that

we were "not persuaded" by the Gerbers' argument "that a remand would moot the appeal."

## DISCUSSION

### I. Mootness

¶20     In their appellate brief, the Gerbers renew their argument that this appeal is moot and should therefore be dismissed.  "Mootness is a question of law we review de novo."  ***Portage County v. J.W.K.***, 2019 WI 54, ¶10, 386 Wis. 2d 672, 927 N.W.2d 509.  "An issue is moot when its resolution will have no practical effect on the underlying controversy."  ***Id.***, ¶11 (citation omitted).  "Appellate courts generally decline to reach moot issues, and if all issues on appeal are moot, the appeal should be dismissed." ***Id.***, ¶12.

¶21     The Gerbers contend that this appeal is moot because "Michael Best has taken over all substantive aspects of the Gerbers' representation in this action" and DeWitt "no longer has any role in this litigation."  (Formatting altered.)  The Gerbers further assert that Michael Best "has agreed to cooperate with [the Otradovec defendants'] claw-back requests to protect [their] legitimate claims of privilege."  (Formatting altered.)  Accordingly, the Gerbers argue that "[n]o order from this Court could possibly have any practical effect on the issues presented on this appeal."

¶22     We disagree.  In the circuit court, the Gerbers have sought to *substitute* Michael Best for DeWitt as their attorneys.  In this appeal, however, the Otradovec defendants are seeking to *disqualify* DeWitt from representing the Gerbers.  As the Otradovec defendants correctly note, this distinction matters

because disqualification, unlike substitution, would "ensure that the Gerbers cannot consult with or reengage DeWitt in the future."

¶23    In arguing that substitution of counsel is sufficient to protect the Otradovec defendants' interests, the Gerbers cite a sworn declaration submitted by one of Michael Best's attorneys, which "affirm[s] that Michael Best will have no contact with DeWitt regarding the substance of this matter throughout its pendency." However, nothing in that declaration addresses *the Gerbers'* ability to work with DeWitt in the future. If we dismissed this appeal on mootness grounds and the circuit court allowed Michael Best to be substituted for DeWitt as the Gerbers' counsel, nothing would prevent the Gerbers from re-retaining DeWitt to represent them in this litigation in the future or consulting with DeWitt regarding the substance of this case.

¶24    Under these circumstances, we agree with the Otradovec defendants that this appeal is not moot because the issue of whether DeWitt is disqualified from representing the Gerbers remains a live controversy, the resolution of which will have a practical effect on the underlying case. We therefore address the merits of the Otradovec defendants' claim that the circuit court erred by denying their motion for disqualification.

## II.  Motion for disqualification

¶25    We review a circuit court's decision on a motion to disqualify an attorney for an erroneous exercise of discretion. *Guerrero v. Cavey*, 2000 WI App 203, ¶9, 238 Wis. 2d 449, 617 N.W.2d 849. A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and uses a demonstrated rational process to reach a reasonable conclusion. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789.

Notably, however, "[d]oubts as to the existence of an asserted conflict of interest are to be resolved in favor of disqualification." **Burkes v. Hales**, 165 Wis. 2d 585, 595, 478 N.W.2d 37 (Ct. App. 1991).

¶26 In this case, we conclude that the circuit court erroneously exercised its discretion by denying the Otradovec defendants' motion to disqualify DeWitt because the facts show that Attorney Blom had a conflict of interest under SCR 20:1.9, and that conflict was imputed to the entire DeWitt firm pursuant to SCR 20:1.10. Given this conclusion, we do not address the Otradovec defendants' alternative argument that disqualification was warranted under SCR 20:1.7. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (explaining that this court need not address all issues raised by the parties if one is dispositive).

¶27 SCR 20:1.9 addresses an attorney's duties to his or her former clients. It provides, in relevant part: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." SCR 20:1.9(a).[4] SCR 20:1.10(a), in turn, provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by … SCR 20:1.9."[5]

---

[4] SCR 20:1.9(a) contains an exception that applies if "the former client gives informed consent, confirmed in a writing signed by the client." It is undisputed that this informed consent exception does not apply in the instant case, and we therefore do not address it further.

[5] SCR 20:1.10 contains three exceptions to this general rule of imputed disqualification, but it is undisputed that none of those exceptions are applicable here. *See* SCR 20:1.10(a)(1)-(3). As a result, we do not address them further.

¶28     Accordingly, under SCR 20:1.9 and 20:1.10, DeWitt is disqualified from representing the Gerbers if: (1) Attorney Blom formerly represented the Otradovec defendants in a matter; (2) DeWitt now represents other parties in a substantially related matter; and (3) the interests of the parties represented by DeWitt are materially adverse to the Otradovec defendants' interests.    As explained below, each of these criteria is satisfied in the instant case.

¶29     First, Attorney Blom formerly represented the Otradovec defendants in transactions associated with the development of the Property between 2012 and 2014.    The Gerbers do not expressly argue otherwise in their appellate brief, although they do briefly suggest that Attorney Blom represented only Ash Investors, not Otradovec or RODAC.  The Gerbers, however, cite no evidence in support of this claim.  To the contrary, in her sworn declaration filed in the federal court proceedings, Attorney Blom expressly stated that she had formerly represented "Defendants named in the above[-]entitled matter."  The "[d]efendants named in the above[-]entitled matter" are Otradovec, RODAC, and Ash Investors. We therefore reject the Gerbers' argument that Attorney Blom represented only Ash Investors in connection with the 2012-14 transactions.  Regardless, this first criterion would be satisfied even if Attorney Blom had represented only Ash Investors in connection with those transactions.

¶30     Second, DeWitt now represents the Gerbers in a matter that is substantially related to the prior matter in which Attorney Blom represented the Otradovec defendants.  This court has explained that two matters are substantially related "if the factual contexts of the two representations are similar or related." *Berg v. Marine Tr. Co.*, 141 Wis. 2d 878, 889, 416 N.W.2d 643 (Ct. App. 1987) (citation omitted).  Additionally, matters are substantially related "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that

11

confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." ***Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n***, 2011 WI 36, ¶97, 333 Wis. 2d 402, 797 N.W.2d 789 (quoting MODEL RULES OF PRO. CONDUCT r. 1.9 cmt. (A.B.A. 2007)).[6] "Only where we can clearly discern 'that the issues involved in [the] current case do not relate to matters in which the attorney formerly represented the adverse party will the attorney's present representation be treated as measuring up to the standard of legal ethics.'" ***Berg***, 141 Wis. 2d at 889-90 (alteration in original; citation omitted).

¶31 Under these standards, it is clear that the two matters at issue in this case are substantially related. The factual contexts of the two matters "are similar or related," *see **id.*** at 899 (citation omitted), as both involve the commercial development of the Property. The two matters also involve "the same transaction or legal dispute," *see **Foley-Ciccantelli***, 333 Wis. 2d 402, ¶97 (citation omitted), as at least some of the Gerbers' claims in the instant lawsuit arise out of transactions that occurred between 2012 and 2014 when Attorney Blom was representing the Otradovec defendants—for instance, the transfer of the Harbor Wealth parcel.

¶32 Moreover, there is a substantial risk that Attorney Blom obtained confidential factual information during her representation of the Otradovec defendants that would now materially advance the Gerbers' position. *See **id.*** We

---

[6] In ***Foley-Ciccantelli v. Bishop's Grove Condominium Ass'n***, 2011 WI 36, ¶97, 333 Wis. 2d 402, 797 N.W.2d 789, our supreme court explained that the ABA Model Rules of Professional Conduct "are not binding on Wisconsin courts but are instructive when interpreting Wisconsin Supreme Court Rules that are analogous to the ABA Model Rules."

agree with the Otradovec defendants that this information would necessarily include "information about Otradovec's knowledge and beliefs, actions, and communications with respect to the very real estate transactions challenged here." Furthermore, the record confirms that DeWitt has, in fact, obtained such confidential information, which was inadvertently disclosed by Amundsen Davis, and it actually used that information against the Otradovec defendants during the federal summary judgment proceedings.

¶33 A comparison of this case with our prior case law also supports a determination that the two matters at issue here are substantially related. In *City of Whitewater v. Baker*, 99 Wis. 2d 449, 450-52, 299 N.W.2d 584 (Ct. App. 1980), an attorney represented a client in a real estate transaction and then later represented a municipality in litigation involving the client's interest in the same property. We concluded that the two matters were substantially related because "[t]he acquisition of certain property is substantially related to the clearance of title in the same property." *Id.* at 454 n.1.

¶34 Later, in *Berg*, we considered a situation in which a shareholder of a family corporation sued various defendants, including his son and the corporation, claiming that the corporation's board had permitted his son to misappropriate the corporation's assets. *Berg*, 141 Wis. 2d at 880. The shareholder then moved to disqualify the law firm representing the corporation because one of the firm's partners had represented the shareholder years before in litigation involving the son's attempt to oust the shareholder as the corporation's director. *Id.* at 880-81. We concluded that the two matters were substantially related because they both involved litigation "between [the shareholder and his son] over control of the family fortunes." *Id.* at 890.

¶35 We agree with the Otradovec defendants that the factual contexts of the two matters at issue in this case are "at least as close" to one another as the factual contexts of the matters at issue in *Baker* and *Berg*. In addition, the following examples from the comment to Rule 1.9 of the ABA Model Rules of Professional Conduct are instructive:

> [A] lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.

MODEL RULES OF PRO. CONDUCT r. 1.9 cmt. (A.B.A. 2019). Here, the DeWitt firm is more akin to the lawyer in the first of these examples, in that the two representations at issue in this case involve the same factual context and also arise out of the same transaction or legal dispute.

¶36 Third, the interests of the parties who are now represented by DeWitt—i.e., the Gerbers—are materially adverse to the Otradovec defendants' interests. The Gerbers' complaint shows that they have asserted multiple claims against the Otradovec defendants, seeking monetary damages and other relief. As the Otradovec defendants note, "[i]t would seem to go without saying that the Gerbers and the [Otradovec defendants]—who are on opposite sides of the 'v.' in this multimillion[-]dollar lawsuit—have materially adverse interests in this litigation."

¶37 As noted above, in their appellate brief, the Gerbers briefly suggest that Attorney Blom represented only Ash Investors, not Otradovec or RODAC, in connection with the development of the Property. Although not expressly stated,

14

the Gerbers may mean to argue that their interests are not materially adverse to those of Ash Investors because they are minority shareholders in Ash Investors and have asserted derivative claims on its behalf in this lawsuit.

¶38    To the extent the Gerbers intended to make this argument, we reject it.  As an initial matter, we have already rejected the Gerbers' assertion that Attorney Blom represented only Ash Investors in connection with the underlying transactions, and the Gerbers' interests are clearly materially adverse to those of Otradovec and RODAC.

¶39    Regardless, even if Attorney Blom represented only Ash Investors, the Gerbers' complaint in this case asserted 21 direct claims *against Ash Investors*, in addition to the separate derivative claims that the Gerbers brought against Otradovec and RODAC on Ash Investors' behalf.  Many of those direct claims against Ash Investors are state law claims that remain pending.  Moreover, the Gerbers' complaint sought a judgment in excess of $1 million "*against all Defendants*, jointly and severally," which would include Ash Investors. (Emphasis added.)  Under these circumstances, any suggestion that the Gerbers' interests are not materially adverse to Ash Investors' interests is plainly meritless.

¶40    For these reasons, we conclude that all of the criteria for the disqualification of DeWitt under SCR 20:1.9 and 20:1.10 are satisfied in this case. As such, the circuit court erroneously exercised its discretion by denying the Otradovec defendants' motion to disqualify DeWitt.  When denying that motion, the court relied in part on its "philosophy" that attorneys "have to be able to move from company to company, firm to firm."  However, the court's own philosophy regarding the desirability of attorneys being able to move between firms has no place in the disqualification analysis under the relevant Supreme Court Rules.  The

court also stated that the Gerbers "have the right … to employ the counsel they want." But the court cited no legal authority in support of that proposition, and we are not aware of any authority suggesting that a litigant has a right to counsel of his or her choosing that would trump an attorney's ethical duties to his or her former clients under SCR 20:1.9.

¶41 The circuit court also determined that the two matters at issue here are not "substantially related." The court did not, however, apply the correct legal standards in reaching that conclusion. Instead, the court stated, "If [Attorney Blom] acted as a counsel, that's one thing. She did not act as a financial advisor, she did not act as the owner, she did not act as the person that was or is going to set a price on a particular thing of real estate." We agree with the Otradovec defendants that this statement does not evince a proper exercise of discretion, as it "lacks clarity" and fails to "articulate a rational basis for the Court's conclusion" that is based on the facts of record and the applicable legal standard.

¶42 Accordingly, we reverse the circuit court's order denying the Otradovec defendants' motion to disqualify DeWitt from representing the Gerbers in this case. We remand for the court to: (1) enter an order disqualifying DeWitt from representing the Gerbers; (2) determine which documents constitute confidential, privileged, or work-product materials that should be subject to a protective order; and (3) enter a protective order prohibiting further use of those materials in this case and requiring the Gerbers' counsel to return or destroy those materials and to certify that they have done so.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16