IN the MATTER OF the GUARDIANSHIP & PROTECTIVE
PLACEMENT OF TAMARA L.P., alleged to be incompetent:

TAMARA L.P., Appellant,

v.

COUNTY OF DANE, Respondent.

Court of Appeals

*No. 93–0094–FT. Submitted on briefs April 27,
1993.—Decided June 17, 1993.*

(Also reported in 503 N.W.2d 333.)

772

For the appellant the cause was submitted on the briefs of *Ronald K. Niesen* of Waunakee, and *Arnold N. Rusky* and *Kim Z. Alexander* of Madison.

On behalf of Tamara L.P., there was a brief by *Kim Zion Alexander* of *Schuster & Mader* of Madison, guardian ad litem.

For the respondent the cause was submitted on the briefs of *Cal W. Kornstedt*, corporation counsel, and *Arnold N. Rusky*, assistant corporation counsel.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Tamara P., a proposed ward and alleged incompetent, appeals from an order under sec. 880.12, Stats., determining that she is a proper subject for guardianship, and protectively placing her pursuant to sec. 55.06, Stats. She claims that the trial court erroneously exercised its discretion when it appointed as guardian ad litem protecting her best interests in those proceedings, the attorney who had previously acted as adversary counsel in the involuntary commitment proceedings preceding the guardianship and protective placement proceedings. We agree.

We apply the "substantial relationship" test which we adopted in *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 884–85, 416 N.W.2d 643, 646–47 (Ct. App. 1987), and conclude that the subject matter of petitions for appointment of a guardian for a proposed ward under sec. 880.07, Stats., and protective placement under sec.

55.06, Stats., is substantially related to the subject matter of a petition for involuntary commitment under sec. 51.20, Stats. Therefore, the trial court erroneously exercised its discretion when it denied Tamara's motion to disqualify the court-appointed attorney as guardian ad litem pursuant to sec. 880.331, Stats. We reverse the order and direct that on remand the trial court appoint a guardian ad litem qualified to serve as such under sec. 880.331(2), Stats.

## BACKGROUND

On September 2, 1992, Tamara P. was the subject of emergency detention under sec. 51.15, Stats. A statement of emergency detention was filed with the court pursuant to sec. 51.15(5), Stats., which had the effect of a petition for commitment under sec. 51.20, Stats. A probable cause hearing was held as required by sec. 51.20(7), Stats. At that hearing, Tamara was represented by Attorney Kim Alexander, who was appointed Tamara's adversary counsel pursuant to sec. 51.20(3), Stats.[1]

At the probable cause hearing, the matter was converted to a proceeding for guardianship under ch. 880, Stats., and protective placement under sec. 55.06, Stats. On September 8, 1992, Alexander informed the Dane County Court Commissioner that Tamara intended to contest the guardianship and protective placement and wished to have counsel appointed for her. Accordingly, Attorney Yolanda Lehner was appointed to represent Tamara. Section 51.20(7)(d), Stats.

---

[1] The statement of emergency detention and the transcript of the probable cause hearing are not in the record.

Section 55.06(1), Stats., provides that protective placement under this section may not be ordered unless there is a determination of incompetency in accordance with ch. 880, Stats. Accordingly, on September 18, 1992, a social worker employed by the Dane County Department of Human Services filed a petition with the circuit court for appointment of a guardian for Tamara's person and estate. At the same time, the social worker filed a petition with the court for protective placement of Tamara. On September 18, 1992, the court commissioner filed an order appointing Alexander guardian ad litem for Tamara in the guardianship and protective placement proceedings.

On September 29, 1992, Tamara's appointed counsel filed a motion to remove Alexander as guardian ad litem on several grounds. First, Tamara contended that permitting Alexander to act as her guardian ad litem violated her right to due process. Second, she claimed that permitting Alexander to act as guardian ad litem violated her right to counsel secured by article I, section 7, of the Wisconsin Constitution and the sixth amendment to the United States Constitution. Finally, Tamara argued that Alexander had a conflict of interest which precluded her from serving as guardian ad litem for Tamara, citing the Wisconsin Supreme Court Rules of Professional Conduct For Attorneys, SCR 20:1.7, 20:1.8(b), 20:1.9, and 20:1.11(c) (Law. Co-op. 1992).

At the contested hearing on September 30, 1992, the trial court denied Tamara's motion to remove Alexander as guardian ad litem. The trial court did not take testimony, but relied on Alexander's representations that her prior representation of Tamara had been very limited. Alexander further represented that the only document she had access to was a statement of the

emergency detention, which she would have had access to as guardian ad litem. The trial court made the following inquiry of Alexander:

> THE COURT: [D]o you feel . . . that you are able to make an independent recommendation to the Court based on the reports that are submitted, the testimony that may be received today, apart from whatever impressions you may have formed from your initial discussions with [Tamara]?
> MS. ALEXANDER: Yes, I do.

On the basis of these representations the court concluded:

> Under the representations made here by Ms. Alexander that she had access to no information that is not otherwise part of this file already and that she is able to make an independent recommendation apart from whatever information [Tamara] may have imparted to her, I believe that the possibility of a conflict of interest has been removed from this case, and I'm going to deny the motion for removal of the guardian ad litem based on the record established before me.

## DECISION

A. Due Process.

We first consider Tamara's claim that Alexander's appointment as guardian ad litem in the guardianship and protective placement proceedings denied her due process. It is not clear whether she claims a violation of her right to procedural due process or to substantive due process. In any event, her argument in this respect is not developed. She cites no authority to support her claim. We will not develop her argument. *See State v.*

*Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980).

B.   Ineffective Assistance of Counsel.

■

On appeal, Tamara confines her right-to-counsel argument to a claim that Alexander failed to provide her with effective counsel. The county and the guardian ad litem assert that Tamara did not raise that issue in the trial court and we should not consider it. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140, 146 (1983). The county and the guardian ad litem mistake Tamara's argument. She argues that the right to the assistance of counsel includes the right to effective representation and, once it is demonstrated that counsel actively represented a conflicting interest, counsel is *per se* ineffective. *State v. Franklin*, 111 Wis. 2d 681, 686–87, 331 N.W.2d 633, 636–37 (Ct. App. 1983). Tamara raised this issue in the trial court. However, we conclude that her right to the effective assistance of counsel does not include the right to insist that the guardian ad litem appointed to represent her best interests provide effective assistance. Tamara is represented by adversary counsel and that representation satisfies any constitutional or statutory right Tamara has to representation. [2]

C.   Conflict of Interest.

Finally, we address Tamara's claim that Alexander could not serve as guardian ad litem in the

―――――――――――――

[2] We express no opinion whether an unrepresented person may challenge an order or judgment on the grounds that the guardian ad litem appointed to secure the person's best interest was ineffective.

guardianship and protective placement proceedings because of her conflict of interest arising out of her representation of Tamara in the ch. 51, Stats., proceedings. We are informed by Dane County that Alexander was appointed guardian ad litem pursuant to an informal policy implemented by the Dane County Probate Court. Whenever a commitment proceeding is "converted" at the probable cause stage to a petition for appointment of a guardian and protective placement, it has been the court's practice to appoint the subject's attorney to be guardian ad litem (with some exceptions) to maintain continuity. The county represents that until now, this policy has not been challenged.

Tamara claims that the record of the contested guardianship and protective placement hearing shows that Alexander used against her information Alexander could only have gained as the result of her prior representation of Tamara. She also contends that Alexander is prohibited by law from acting as guardian ad litem for Tamara regardless of whether an actual conflict arose out of Alexander's prior representation of Tamara in the ch. 51, Stats., proceedings.

We address Tamara's latter claim first because our resolution of that claim may provide guidance to trial courts. If the probate court's informal procedure by which a guardian ad litem is appointed in incompetency cases is not permitted by law, we need not consider Tamara's claim that Alexander had an actual conflict of interest which prevented her from serving as guardian ad litem.

Section 880.331, Stats., governs all matters affecting guardians ad litem in incompetency cases. Tamara argues that Alexander's appointment as guardian ad litem was prohibited by sec. 880.331(2), Stats., which provides in part: "No person who is an interested party

in a proceeding, [or who] appears as counsel in a proceeding on behalf of any party . . . may be appointed guardian ad litem in that proceeding." The proceedings to which sec. 880.331(2) applies are those named in sec. 880.331(1), Stats., which provides:

> The court shall appoint a guardian ad litem whenever it is proposed that the court appoint a guardian on the ground of incompetency under s. 880.33, protectively place a person or order protective services under s. 55.06, review any protective placement or protective service order under s. 55.06 or terminate a protective placement under s. 55.06.

The county and the guardian ad litem argue that the probable cause hearing under sec. 51.20(7), Stats., is a proceeding separate from the proceeding to appoint a guardian under sec. 880.33, Stats., or to protectively place a person under sec. 55.06, Stats. We agree.

When a person is taken into custody on an emergency basis under sec. 51.15, Stats., the individual subject to detention may not be detained for more than seventy-two hours exclusive of Saturdays, Sundays and holidays unless a hearing is held under sec. 51.20(7), Stats., or sec. 55.06(11)(b), Stats. Section 51.15(5), Stats. Under sec. 51.20(7)(d), Stats., if the court determines after a probable cause hearing that there is probable cause to believe that the detained individual is a fit subject for guardianship and protective placement or services, the court may, without further notice, appoint a temporary guardian for the detained individual and order temporary protective placement or services under ch. 55, Stats., for a period not to exceed thirty days. It shall proceed as if a petition had been made for guardianship and protective placement or services.

Although the emergency detention and involuntary commitment procedures triggered the filing of the petitions for guardianship and protective placement, once the trial court acted under sec. 51.20(7)(d), Stats., the purposes of the emergency detention and probable cause hearing were satisfied. Those proceedings were complete. Thereafter, the filing of the petitions for guardianship and protective placement initiated entirely new proceedings. We therefore conclude that Alexander was not disqualified by sec. 880.331(2), Stats., from appointment as guardian ad litem in the guardianship and protective placement proceedings.

We next consider whether Alexander was disqualified from serving as guardian ad litem for Tamara's best interests by ethical principles governing advocacy and representation. We have adopted the "substantial relationship" test in attorney disqualification cases. *Berg*, 141 Wis. 2d at 884–85, 416 N.W.2d at 646–47. "Simply stated, the test is as follows: 'where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are "substantially related." ' " *Id.* at 885, 416 N.W.2d at 647 (quoting *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 223 (7th Cir. 1978)). We adopted the substantial relationship test from the interpretation of Canons of the American Bar Association Code of Professional Responsibility which require lawyers to "preserve the confidences and secrets of a client," and to "avoid . . . even the appearance of professional impropriety." *Id.* at 886, 416 N.W.2d at 647. These canons were adopted by the Wisconsin Supreme Court in its Rules of Professional Conduct For Attor-

neys, SCR 20.21 and 20.48 (Callaghan 1986). *Berg*, 141 Wis. 2d at 886, 416 N.W.2d at 647.[3]

Under the substantial relationship test, disqualification does not require finding that a breach of ethical standards or client confidences has occurred, but only that the attorney has undertaken representation which is adverse to the interests of a former client. *Id.* at 892, 416 N.W.2d at 649. We apply the substantial relationship test in attorney disqualification cases where the attorney represents a party in a matter in which the adverse party is the attorney's former client. We conclude that it is appropriate to apply that test to the appointment of a guardian ad litem in incompetency cases because the same principles of confidentiality and propriety apply.

We further conclude that a substantial relationship exists between an involuntary commitment under sec. 51.20, Stats., and the appointment of a guardian under sec. 880.331, Stats., and the protective placement of a person subject to guardianship, under sec. 55.06, Stats. A substantial relationship will be found to exist "if the factual context of the two representations are similar or related." *Berg*, 141 Wis. 2d at 889, 416 N.W.2d at 648 (quoting *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985)). In the involuntary commitment proceedings under sec. 51.20, it was Alexander's duty to represent Tamara as "adversary counsel." Section 51.20(3), Stats. That representation

---

[3] These canons are now contained in various provisions of the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys (Law. Co-op. 1992). *See, e.g., Preamble: A Lawyer's Responsibilities*; SCR 20:1.6, *Confidentiality of Information*; SCR 20:1.9, *Conflict of Interest: Former Client.*

included resisting Tamara's involuntary commitment for treatment, and the proposal to convert the commitment proceedings to proceedings to appoint a guardian for Tamara and to protectively place her.[4] Alexander's duties as guardian ad litem may require that she take a position directly opposed to the wishes of her former client. Section 880.331(3), Stats., provides:

> The guardian ad litem shall be an advocate for the best interests of the proposed ward or alleged incompetent as to guardianship, protective placement and protective services. The guardian ad litem shall function independently, in the same manner as an attorney for a party to the action, and shall consider, but shall not be bound by, the wishes of the proposed ward or alleged incompetent or the positions of others as to the best interests of the proposed ward or alleged incompetent. . . .

We do not see how an attorney can move easily from adversary counsel to the quasi-advocacy role mandated by sec. 880.331(3), Stats. For example, paragraphs (4)(d) and (5)(f) of sec. 880.331, Stats., require the guardian ad litem to inform the court if the proposed ward or alleged incompetent objects to a find-

---

[4] The dissent mistakenly assumes that we impose on counsel the "sole and unalterable duty" to represent his or her client, even against counsel's better judgment. We do not impose that duty. Counsel may withdraw from representation if counsel concludes that he or she cannot conscientiously advocate the interests of the client. SCR 20:1.16. Until that time, counsel must abide by the client's decisions concerning the objectives of representation. SCR 20:1.2(a). The whole purpose of "adversary counsel" (using the legislature's term) is to resist the efforts of the state to involuntarily commit counsel's client. There is no room in these proceedings for counsel to file a "no merit" report, as the dissent suggests.

ing of incompetency, or the present or proposed placement or the recommendation of the guardian ad litem as to the proposed ward's or alleged incompetent's best interests. As Tamara's advocacy counsel under sec. 51.20(3), Stats., it was Alexander's duty to argue zealously on behalf of her client that she was not incompetent and was not a fit subject for guardianship or placement. As guardian ad litem, Alexander considered it her duty to express her opinion that it was in Tamara's best interest to have a guardian appointed of her person and to be protectively placed in a locked unit. We find no evidence that Alexander was influenced by her prior advocacy representation of Tamara. However, potential for the advocate-become-guardian ad litem to be influenced by her previous representation exists.

The Wisconsin Supreme Court has recently examined the role of the guardian ad litem under sec. 767.045, Stats., which imposes duties on the guardian ad litem substantively identical to those imposed on a guardian ad litem under sec. 880.331, Stats. *Hollister v. Hollister*, 173 Wis. 2d 413, 496 N.W.2d 642 (Ct. App. 1992). In that case the court said: "The attorney acting as guardian ad litem for the child's best interests is to be treated as any other attorney acting as an advocate for a party in the proceeding." *Id.* at 419, 496 N.W.2d at 644-45. We believe this includes conformance to the ethical standards which govern advocacy and representation. In *Berg* we said:

> We agree with Judge Doyle's observation that a lawyer's representation of an interest adverse to that of a former client in a matter substantially related to that involved in the former representa-

tion "would seem a breach of trust in the lay sense of justice," and that proof that no confidential information actually had been disclosed "would not remove the taint of disloyalty."

141 Wis. 2d at 890–91, 416 N.W.2d at 649 (citing *Marketti v. Fitzsimmons*, 373 F. Supp. 637, 639 (W.D. Wis. 1974)).

■ The county argues that the trial court correctly found that, although there was a potential conflict of interest, the facts in the instant case did not present a conflict and therefore the trial court appropriately exercised its discretion when it denied Tamara's motion to disqualify Alexander. We believe the trial court acted under an error of law when it concluded that Alexander could serve as guardian ad litem if the court was satisfied that there was no actual conflict of interest. Had the trial court applied the "substantial relationship" test we believe the court would have reached a contrary conclusion.

> The heart of the substantial relationship test is the presumption that a client will disclose confidences to his or her attorney. While there is language in some federal cases to the contrary, the presumption is considered irrebuttable because of the impropriety of testimonial inquiry into conversations between attorney and client to determine whether actual confidences were disclosed.

*Berg*, 141 Wis. 2d at 891 n.5, 416 N.W.2d at 649 n.5 (citing *Analytica Inc. v. NPD Research Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983); *Novo Terapeutisk, Etc. v. Baxter Travenol Labs.*, 607 F.2d 186, 191–92 (7th Cir. 1979) (*en banc*) (the federal rule "clearly contemplates an irrebuttable presumption")).

785

We conclude that the trial court should have granted Tamara's motion to disqualify Alexander as guardian ad litem. On remand the trial court may proceed on the petitions for appointment of a guardian and protective placement, subject to the appointment of a qualified guardian ad litem under sec. 880.331, Stats.

*By the Court.*—Order reversed and cause remanded with directions.

EICH, C.J. (*dissenting*). The majority concludes that a *per se* conflict of interest arises from Dane County's practice of appointing a party's attorney as his or her guardian ad litem when involuntary commitment proceedings are converted to temporary guardianship proceedings. It so concludes because it believes that the "duty" of an attorney appointed to represent a client in commitment proceedings is to invariably "resist" both commitment for treatment and the conversion of the proceedings to a temporary guardianship/protective placement proceeding: "to argue zealously on [her] behalf . . . that she was not incompetent and was not a fit subject for guardianship or placement." Majority op. at 784.

I do not agree that in representing the subject of commitment proceedings an attorney's sole and unalterable duty is to carry the fight against commitment for treatment, or against conversion of the proceedings to protective placement proceedings, at all costs and regardless of the facts. We impose no such absolute resist-at-all-cost duty on lawyers representing persons charged with crimes. If we did, there would be no such thing as a plea in the trial court or an *Anders* no-merit report on an appeal. Nor do I believe that the designa-

tion — without any explanation — of attorneys for parties in commitment proceedings as "adversary counsel," sec. 51.20(3), Stats., imposes such a duty on lawyers appearing in such cases.

As the county points out, SCR 20:1.14 (Law. Co-op. 1992), while stating that an attorney representing a client under a disability should, "as far as reasonably possible, maintain a normal client-lawyer relationship with the client," also provides that when the attorney "reasonably believes . . . the client cannot . . . act in [his or her] own interest," the attorney may seek the appointment of a guardian "or take other protective action with respect to [the] client." The rule thus presupposes that there will be occasions in the course of representing a client with a mental disability that information will come to the lawyer's attention indicating that the client requires a guardianship or other protective action. To me, that is inconsistent with the majority's "resist, period" characterization of counsel's obligation to a client in proceedings such as these.

Disqualification of an attorney on conflict-of-interest grounds is committed to the "broad discretion" of the trial court, "and the scope of our review is limited accordingly." *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 887, 416 N.W.2d 643, 647 (Ct. App. 1987). The deference we pay to discretionary decisions of the trial court is well known: we will not find that the court has exceeded its discretion "if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for [its] decision." *Id.* Indeed, we have often said that "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455

N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

In this case, the trial court determined that no conflict in fact existed because Attorney Alexander had had no access to any information that was not otherwise part of the guardianship and protective placement files and that she thus could make an independent recommendation to the court as Tamara P.'s guardian ad litem. I agree with the county that the record establishes that the trial court did in fact exercise its discretion on the issue and that its decision was one a reasonable judge could reach; and that requires affirmance even if the decision was one with which the appellate court itself would not agree. *Burkes v. Hales*, 165 Wis. 2d 585, 590–91, 478 N.W.2d 37, 39 (Ct. App. 1991). I would do so here.