IN the MATTER OF the GUARDIANSHIP AND PROTECTIVE
PLACEMENT OF LILLIAN P.:

Vincent J. GUERRERO, Appellant,

v.

Patricia M. CAVEY, Respondent.†

Court of Appeals

*No. 99–2122. Submitted on briefs February 11,
2000.—Decided July 20, 2000.*

### 2000 WI App 203

(Also reported in 617 N.W.2d 849.)

†Petition to review denied.

451

On behalf of the appellant-appellant, the cause was submitted on the briefs of *Vincent J. Guerrero* of *Neupert & Wakeman, S.C.* of Lake Mills.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Patricia M. Cavey* of *Tammi, Cohn & Cavey* of Milwaukee and *Jack Longert* of *Legal Action of Wisconsin, Inc.* of Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Vincent J. Guerrero, guardian ad litem for Lillian P., the subject of a guardianship and protective placement, appeals the circuit

court's denial of his motion to disqualify attorney Patricia M. Cavey from the dual representation of Lillian P. and her son, Lester P. Guerrero contends Cavey has a conflict of interest that Lillian was incapable of waiving. The circuit court noted a conflict, but it did not disqualify Cavey because attorney Jack Longert agreed to act as co-counsel to Cavey during her representation of Lillian. Because we conclude that a conflict of interest existed, that Lillian was not competent to waive that conflict, and that Longert's appearance as co-counsel to Cavey did not negate Cavey's conflict of interest, we reverse the circuit court's order, which permitted Cavey's continued representation of Lillian.

## BACKGROUND

¶ 2.  On July 28, 1998, Lillian P., a woman who was then almost ninety years old, was found to be incompetent due to a form of dementia. The circuit court appointed a guardian of her property and of her person, and she was protectively placed. Initially, the court appointed Mely Arndt, who had a long-standing relationship with Lillian, as her guardian, and Lillian was protectively placed in her own house, with services provided by Jefferson County Human Services Department. Lester P., one of Lillian's sons, and Lester's son, Jeremy, lived with Lillian. In October of 1998, notice was given to the court and interested persons, including Lester through the attorney who was then representing him, that Lillian's placement had been changed to a community-based residential facility (CBRF) because she required more care than she was able to receive at home. The notice stated: "If anyone wishes to contest this change in placement, they may do so by sending a written request to the Jefferson County Register in Probate, Jefferson County Court-

house, 320 South Main Street, Jefferson, Wisconsin, 53549." Lester did not object to the removal of Lillian from her house.[1]

¶ 3.   In January of 1999, Cavey filed a notice of appearance as counsel for Lester and a petition that he be permitted to purchase Lillian's house for $70,000. Also in January, Arndt, as guardian of Lillian's estate, filed a petition to sell Lillian's house. She submitted an appraisal, which valued the property at $90,000. Lillian's other two sons, Robert and Dean, both notified the court that they believed it was in Lillian's best interest to sell the house, but at a market-based price. The circuit court then appointed Guerrero as guardian ad litem for Lillian to assist in the determination of whether selling her house was in her best interests.

¶ 4.   On March 12, 1999, the circuit court denied Lester's petition to purchase Lillian's house for $70,000 and granted Arndt's petition to put the house on the market, subject to confirmation of sale by the court. Apparently, prior to March 12th, the court had directed that Lester pay rent for his occupancy of the house. Arndt requested that he pay $650 per month, which rent included electricity and heat for the house.[2] According to the record before this court, Lester did not

---

[1] Lester's continued agreement with Lillian's change in placement was reaffirmed at the January 27, 1999 pretrial conference, where Cavey informed the court on Lester's behalf, "[S]he is now at a Group Home, a very nice Group Home. . . . So there is no objection to that placement."

[2] The court's directive in regard to rent is not part of the record before us on appeal, but Arndt's letter requesting that Lester comply with that request is. Further reference to Lester's nonpayment of rent appears in the court's comments during the hearing on Guerrero's motion to remove Cavey as adversary counsel for Lillian.

do so. On March 30, 1999, Arndt filed a petition to confirm the sale of Lillian's house to a third party for $115,000. Also on March 30th, Cavey, acting on Lester's behalf, objected to confirmation and moved for a *Watts*[3] review of Lillian's placement.

¶ 5.   On April 7, 1999, Arndt, who is an adult foster child of Lillian, filed her annual report as guardian of Lillian's person. In it she noted that she had visited Lillian weekly, as well as contacting her by telephone, and that "her son [is] trying [to] manipulate her well being." Shortly thereafter she wrote the court, resigning as guardian due to conflicts she had with Lester and Cavey. The court appointed Lutheran Social Services as successor guardian.

¶ 6.   An April 16, 1999 pretrial was held on Lester's motions objecting to the confirmation of the sale of Lillian's house and review of her placement. There, Cavey told the court for the first time that she represented both Lester and Lillian in objecting to the sale and in requesting a *Watts* review of Lillian's placement. Cavey stated that Lillian had signed a retainer agreement, a release of confidential information and a statement which outlined the "risks and benefits" of her dual representation of Lillian and Lester. She submitted none of these documents to the court. Cavey argued that Lillian told her that she wanted to go home and therefore objected to the sale. Guerrero, whom the circuit court then appointed to act as Lillian's guardian ad litem in regard to any *Watts* review as well as the proposed sale of her house, raised the ethical implications of Cavey's dual representation, calling it "a classic conflict of interest with her representation of [Lillian] and [Lester] . . . ."

---

[3] *See State ex rel. Watts v. Combined Community Servs. Bd.*, 122 Wis. 2d 65, 362 N.W.2d 104 (1985).

¶ 7. After Guerrero moved to disqualify Cavey from representing Lillian, the court scheduled another hearing to address that issue. At that hearing, Cavey said that she recognized a potential conflict of interest but saw no actual conflict. She said that Lillian had signed a written waiver, thereby permitting her dual representation. Attorney Jack Longert of Legal Action of Wisconsin, Inc. also appeared for Lillian at that hearing. Longert said that if a conflict developed between Lillian and Lester, he would represent Lillian.

¶ 8. The circuit court was concerned about having Lillian's estate pay for legal services that Cavey would have provided to benefit Lester. Cavey opined that she could be paid only if the court determined her services were "necessaries" under the law. Longert said no fees would be charged for his services, as Lillian qualified for free legal services under Legal Action's standards. Based on these representations, the circuit court denied Guerrero's motion to disqualify Cavey. Guerrero appeals. Cavey then moved this court to conclude that Guerrero's appeal is frivolous.

## DISCUSSION

**Standard of Review.**

¶ 9. Circuit court decisions on motions to disqualify attorneys are reviewed under the erroneous exercise of discretion standard. *See Jesse v. Danforth*, 169 Wis. 2d 229, 245–46, 485 N.W.2d 63, 69 (1992). The appellate court will not reverse a discretionary decision of the circuit court "[w]here the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is consistent with applicable law and one a reasonable judge could reach

. . . ." *Marten Transp. Ltd. v. Hartford Specialty Co.*, 194 Wis. 2d 1, 13, 533 N.W.2d 452, 455 (1995). However, " 'we have never hesitated to reverse discretionary determinations where the exercise of discretion is based on an error of law.' " *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 887, 416 N.W.2d 643, 647 (Ct. App. 1987) (citation omitted). Whether an actual conflict of interest exists is a question of law which we decide without deference to the circuit court. *See State v. Kalk*, 2000 WI App 62, ¶ 13, 234 Wis. 2d 98, 608 N.W.2d 428.

¶ 10.  Additionally, we decide as a matter of law whether an appeal is frivolous under WIS. STAT. § 809.25(3) (1997–98).[4] *See J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 225, 474 N.W.2d 756, 760 (Ct. App. 1991).

**Conflict of Interest.**

¶ 11.  An attorney is prohibited from representing multiple clients with adverse interests unless certain conditions are met. *See* SCR 20:1.7. A lawyer's duty to promote his or her client's interests exists in civil and in criminal law. *See State v. Street*, 202 Wis. 2d 533, 543, 551 N.W.2d 830, 835 (Ct. App. 1996). If the representation of two or more clients by the same counsel is serial (*i.e.*, involving a past and a current client) and an objection is made to such representation in the circuit court,[5] we apply a two-part test to determine

---

[4] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[5] In a criminal context, if the issue was not raised at the circuit court, on appeal a defendant must show by clear and convincing evidence that there was an actual conflict of interest

whether an attorney should be disqualified. "In order to prevail on a motion to disqualify an attorney, the moving party must establish: (1) that an attorney-client relationship existed between the attorney and the former client; and (2) that there is a substantial relationship between the two representations." *Burkes v. Hales,* 165 Wis. 2d 585, 591, 478 N.W.2d 37, 40 (Ct. App. 1991) (citation omitted).

¶ 12.   If the representation is dual (*i.e.*, one attorney is representing two parties in the same action) the circuit court will not be faced with the two-part test of *Burkes.* Rather, it will need to answer two questions: (1) whether the attorney "has undertaken representation which is adverse to the interests of a present client or the interests of a third party with whom the attorney has a substantial relationship," *La Crosse County Dep't of Soc. Servs. v. Rose K.,* 196 Wis. 2d 171, 178, 537 N.W.2d 142, 145 (Ct. App. 1995), and (2) whether the client has made a knowing, voluntary, written waiver of actual and potential conflicts inherent in the representation. *See State v. Kaye,* 106 Wis. 2d 1, 16, 315 N.W.2d 337, 343 (1982).

¶ 13.   The rule that an attorney should generally be disqualified if a conflict or serious potential for conflict exists was established to " 'preserve the confidences and secrets of a client,' and to 'avoid . . . even the appearance of professional impropriety.' " *Berg,* 141 Wis. 2d at 886, 416 N.W.2d at 647 (citation omitted). The circuit court is not required to make a finding that a breach of ethical standards or client confidentiality has occurred, but only to conclude that the attorney has undertaken representation that is

which adversely affected the representation the attorney provided. *See State v. Street,* 202 Wis. 2d 533, 543, 551 N.W.2d 830, 836 (Ct. App. 1996).

adverse to the interests of a client. *See Rose K.*, 196 Wis. 2d at 177, 537 N.W.2d at 144. There need not be an actual conflict of interest; a serious potential conflict of interest is enough for a circuit court, in the exercise of its discretion, to disqualify an attorney. *See id.* (citing *State v. Miller*, 160 Wis. 2d 646, 659, 467 N.W.2d 118, 123 (1991)).

¶ 14.   In the case at hand, Cavey has represented to the circuit court and to this court that she is providing dual representation to Lester and Lillian in regard to objecting to the confirmation of the sale of Lillian's house and also in regard to the *Watts* review of Lillian's placement. Because Guerrero has objected to Cavey's representation of Lillian, we must determine whether Cavey has undertaken a representation which is adverse to Lillian's interests. We begin by noting that " '[d]oubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification.' " *Berg*, 141 Wis. 2d at 890, 416 N.W.2d at 648 (citation omitted).

¶ 15.   We find guidance in *Rose K.*, where we considered whether an attorney who prosecuted a father in a paternity action and represented the county in child support enforcement actions could also act as the guardian ad litem for those same children in a CHIPS proceeding. In doing so, we examined the practical effects of dual representation. *See Rose K.*, 196 Wis. 2d at 176, 537 N.W.2d at 144. In our analysis, we asked:

> Should [the attorney] commence a support action and satisfy her client, the state, and a person with whom she has a contractual relationship, [the county]? Or should she not do so because her other clients, [the] children, could use the extra money for an item not provided through AFDC payments? If [the father] fails to pay what is ordered, should [the

attorney] attempt to incarcerate him, thus depriving the children of a father? *These conflicts are real, and they place [the attorney] in a position that no attorney should face: deciding which of two clients she will serve.*

*Id.* at 179, 537 N.W.2d at 145 (emphasis added).

¶ 16.  The conflicts of interest here are as real as they were in *Rose K.*, and they have similar practical effects on the two potential clients. First, Lester is seeking to purchase Lillian's house at a below-market price. He is objecting to Lillian's guardian's petition to confirm a sale for $40,000 more than he has offered.[6] Second, Lester is living in Lillian's house without paying rent. Lillian's guardian has requested $650 per month. Third, it is in Lester's interest to persuade Lillian to seek a change in her protective placement from the CBRF to her house, so his wishes in regard to purchasing the house have a better opportunity for realization.

¶ 17.  Lester argues that his interests are not inconsistent with Lillian's because she wants to return home. However, all the medical reports in the record and the representations of the guardian ad litem show that returning to her house may not be in Lillian's best interests. Furthermore, the house has expenses for its maintenance which Lester's rental payments would help to defray, whether Lillian returns home or not. Further, if Lillian is unable to return home, it may be in her best interest to sell the house at the highest price available. Lillian has two other sons who are in agreement to sell the house, but not at less than fair market

---

[6] After Arndt moved to confirm a sale for $115,000, Lester made a second offer to purchase the house for $75,000, with a life estate to Lillian.

value.. However, if Cavey is to vigorously represent Lester, she must try to find ways to block the sale to the buyer secured by Arndt, she must advocate for Lester to live rent-free, and she must try to establish that Lillian should have the opportunity to return to her house, even if to do so would be contrary to Lillian's well being.[7] Furthermore, in her efforts to help Lester, Cavey's actions have been noted by Arndt as the reason she could not continue as Lillian's guardian. Lillian's guardian ad litem has noted similar concerns about Cavey's aggressiveness on behalf of Lester. Therefore, based on the record before us, we conclude that Lillian's and Lester's interests are adverse, resulting in a conflict of interest in Cavey's representation of Lillian.

**Waiver of Conflict.**

¶ 18.   Having determined that Lester and Lillian's interests are adverse, we must next address Cavey's assertion that Lillian consented to the dual representation after full disclosure, thereby waiving any conflicts of interest. Cavey states that she disclosed to Lillian the "risks and benefits" of the dual representation and that Lillian signed a document waiving all conflicts, consistent with SCR 20:1.7(b). Therefore, Cavey claims there is no basis for her disqualification.

---

[7] There are repeated references in the record to Lester's "manipulation" of Lillian and one reference to alleged emotional and physical abuse of Lillian by Lester. Those allegations would be relevant to the circuit court's determination of whether Lillian should return to live with Lester at her house. It would be in Lester's interest to put those allegations aside and in Lillian's interest to thoroughly investigate them and prove them, if proof be had.

461

¶ 19.   Supreme Court Rule 20:1.7 addresses how an attorney should proceed once a conflict or potential conflict of interest has been established. It provides:

> **Conflict of interest: general rule. (a)** A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents in writing after consultation.
> **(b)**   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1)   the lawyer reasonably believes the representation will not be adversely affected; and
> (2)   the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The parties dispute whether our analysis of this conflict should be taken under (a) or (b). However, both (a) and (b) require written consent by both clients before a waiver is effective. Having determined that a conflict of interest exists, we turn our attention to whether Lillian, who has been declared incompetent, can knowingly and voluntarily waive the conflict, thereby consenting to the dual representation. We conclude that she is legally incapable of doing so.

¶ 20.   Whether a person who has been adjudicated incompetent, such that a guardian of her person

and property and a protective placement are required, has the capacity to waive a conflict of interest is a matter of first impression in Wisconsin. In order to resolve the question presented, we examine whether a knowing and voluntary waiver is possible in such circumstances.

■

¶ 21.  An effective waiver of a conflict or potential conflict of interest which is knowing and voluntary requires the lawyer to disclose the following: (1) the existence of all conflicts or potential conflicts in the representation; (2) the nature of the conflicts or potential conflicts, in relationship to the lawyer's representation of the client's interests; and (3) that the exercise of the lawyer's independent professional judgment could be affected by the lawyer's own interests or those of another client. On the part of the client, it also requires: (1) an understanding of the conflicts or potential conflicts and how they could affect the lawyer's representation of the client; (2) an understanding of the risks inherent in the dual representation then under consideration; and (3) the ability to choose other representation. *See State v. Cobbs*, 221 Wis. 2d 101, 105–06, 584 N.W.2d 709, 710 (Ct. App. 1998); *Kaye*, 106 Wis. 2d at 14–16, 315 N.W.2d at 342–43; SCR 20:1.7.

¶ 22.  Here, the record contains no representation by Cavey of what she disclosed to Lillian in regard to her opinion of the conflicts or potential conflicts of interest inherent in her dual representation in this action or what effect such conflicts may have on her representation of Lillian. Indeed, Cavey represented to the court there were no conflicts. Likewise, the record contains no testimony of what Lillian might have understood about the conflicts which we have identified or her understanding of the effect they could have

on Cavey's representation of her. However, we note that when a client consents to dual representation in the face of a conflict of interest, that consent puts the client on notice that the attorney's loyalty may become impaired at some juncture. Therefore, the client's understanding is a necessary component of dual representation.

■

¶ 23.  Here, by asserting that Lillian consented to the dual representation, Cavey in essence contends that Lillian has the ability to fully understand all that dual representation imports. However, Cavey has never contended that the circuit court erred when it found Lillian incompetent under the law. Further, the petition for guardianship and protective placement for Lillian was granted because the court determined that Lillian could not care for herself and that she was confused and not oriented to place or time. The record also reflects that Lillian's dementia has progressed to the point where she has required emergency commitments to Mendota Mental Health Institute due to increasing confusion and anxiety which have resulted in physical attacks on her caregivers and on other patients. There is nothing in the record which even suggests that Lillian has the capacity to knowingly consent to the dual representation proposed by Cavey. Therefore, because Lillian has been adjudicated incompetent such that a guardian of her person and property and a protective placement are required, we conclude that, as a matter of law, Lillian was incapable of making a knowing and voluntary waiver of the conflict of interest Cavey has. Accordingly, any waiver executed by Lillian is invalid, and Cavey was never lawfully retained by Lillian.

¶ 24.   The circuit court recognized the existence of the conflict of interest. However, the court denied the guardian ad litem's motion for disqualification because it believed Lillian would receive adequate representation so long as Longert remained Lillian's co-counsel to ensure loyalty to her affairs. While we understand the court's rationale, having co-counsel for Lillian does not negate our conclusion that Cavey has an impermissible conflict of interest and therefore cannot represent Lillian. Longert's presence does not resolve Cavey's conflict of interest, nor does it provide a substitute for Lillian's knowing and voluntary waiver. Accordingly, we conclude that the circuit court erred in denying Guerrero's motion to disqualify Cavey from representing Lillian.[8]

---

[8] Cavey also argues that this case is controlled by *Tamara L.P. v. County of Dane*, 177 Wis. 2d 770, 503 N.W.2d 333 (Ct. App. 1993). In that case, we held that the circuit court erred in appointing as guardian ad litem the attorney who had previously acted as adversary counsel in the involuntary commitment proceedings of a ward. *See id.* at 774, 503 N.W.2d at 334. Applying the substantial relationship test, we concluded that the attorney should have been disqualified and the circuit court erred in concluding that an actual conflict of interest need exist before a motion to disqualify may be granted. We stated that a potential conflict was sufficient to satisfy the substantial relationship test. *See id.* at 784–85, 503 N.W.2d at 338. Cavey contends that *Tamara L.P.* demonstrates "the differing roles of guardian ad litem and defense counsel" and that those roles are "inherently in conflict." Cavey then asserts that the guardian ad litem "is not the gatekeeper who can pick and choose how the ward's own interests will be represented." Counsel's reliance on *Tamara L.P.* for these assertions is misplaced. If anything, *Tamara L.P.* supports Guerrero's motion in that it recognizes that an attorney may be disqualified even if the conflict of inter-

**Frivolous Appeal.**

¶ 25.    Finally, Cavey has moved this court, pursuant to WIS. STAT. § 809.25(3), for attorney's fees and costs, contending that Guerrero's appeal is frivolous. We have ruled in favor of Guerrero. His appeal is not frivolous.

## CONCLUSION

¶ 26.    Because we conclude that a conflict of interest existed, that Lillian was not competent to waive that conflict, and that Longert's appearance as co-counsel to Cavey did not negate Cavey's conflict of interest, we reverse the circuit court's order, which permitted Cavey's continued representation of Lillian.

*By the Court.*—Order reversed.

est has not evolved to an actual conflict, but instead remains a potential one. We see no basis for Cavey's claim that *Tamara L.P.* compels us to decide this appeal in her favor.